## WHITFIELD *v.* UNITED STATES

No. 03–1293.   Argued November 30, 2004—Decided January 11, 2005*

---

*Together with No. 03–1294, *Hall* v. *United States,* also on certiorari to the same court.

210

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Sharon C. Samek,* by appointment of the Court, *post,* p. 985, argued the cause for petitioners in both cases. With her on the briefs were *Thomas C. Goldstein, Amy Howe, Pamela S. Karlan,* and *Richard Ware Levitt.*

*Jonathan L. Marcus* argued the cause for the United States in both cases. With him on the brief were *Acting Solicitor General Clement, Assistant Attorney General Wray, Deputy Solicitor General Dreeben,* and *Kirby A. Heller.*†

---

†*Richard A. Greenberg* and *Joshua L. Dratel* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging reversal in both cases.

JUSTICE O'CONNOR delivered the opinion of the Court.

These cases present the question whether conviction for conspiracy to commit money laundering, in violation of 18 U. S. C. § 1956(h), requires proof of an overt act in furtherance of the conspiracy. We hold that it does not.

I

In March 1999, a federal grand jury returned a 20-count indictment against petitioners and five codefendants. As relevant here, Count II of the indictment charged petitioners with conspiracy to launder money, in violation of § 1956(h). The indictment described, in general terms, the "manner and means" used to accomplish the objects of the money laundering conspiracy, but it did not charge the defendants with the commission of any overt act in furtherance thereof.

At trial, the Government presented evidence that petitioners were members of the executive board of an entity known as Greater Ministries International Church (GMIC). GMIC operated a "gifting" program that took in more than $400 million between 1996 and 1999. Under that program, petitioners and others induced unwary investors to give money to GMIC with promises that investors would receive double their money back within a year and a half. Petitioners marketed the program throughout the country, claiming that GMIC would generate returns on investors' "gifts" through overseas investments in gold and diamond mining, commodities, and offshore banks. Investors were told that GMIC would use some of the profits for philanthropic purposes. Most of these claims were false. GMIC made none of the promised investments, had no assets, and gave virtually nothing to charity. Many participants in GMIC's program received little or no return on their money, and their investments indeed largely turned out to be "gifts" to GMIC representatives. Petitioners together allegedly received more than $1.2 million in commissions on the money they solicited.

At the close of the evidence, petitioners asked the District Court to instruct the jury that the Government was required to prove beyond a reasonable doubt that at least one of the co-conspirators had committed an overt act in furtherance of the money laundering conspiracy. The court denied that request, and the jury returned a verdict of guilty on the money laundering conspiracy charge.

The Eleventh Circuit affirmed petitioners' convictions, holding, in relevant part, that the jury instructions approved by the District Court were proper because § 1956(h) does not require proof of an overt act. 349 F. 3d 1320, 1324 (2003). The Court of Appeals noted that some of its sister Circuits had taken the opposite position. *Id.*, at 1323 (citing *United States* v. *Wilson*, 249 F. 3d 366, 379 (CA5 2001); *United States* v. *Hildebrand*, 152 F. 3d 756, 762 (CA8 1998)). It concluded, however, that those decisions were erroneously based on case law interpreting the general conspiracy statute, 18 U. S. C. § 371, which, unlike § 1956(h), expressly includes an overt-act requirement. 349 F. 3d, at 1323. The Eleventh Circuit instead relied upon *United States* v. *Shabani*, 513 U. S. 10 (1994), where we held that the drug conspiracy statute, 21 U. S. C. § 846, does not require proof of an overt act. Because the language of 18 U. S. C. § 1956(h) and 21 U. S. C. § 846 is "nearly identical," the Eleventh Circuit found itself compelled to follow the reasoning of *Shabani* in holding that § 1956(h), too, requires no proof of an overt act. 349 F. 3d, at 1323–1324. We granted certiorari to resolve the conflict among the Circuits on the question presented, 542 U. S. 918 (2004), and we now affirm the decision below.

## II

Congress enacted 18 U. S. C. §§ 1956 and 1957 (2000 ed. and Supp. II) as part of the Money Laundering Control Act of 1986, Pub. L. 99–570, 100 Stat. 3207–18. Section 1956 penalizes the knowing and intentional transportation or transfer of monetary proceeds from specified unlawful activities,

while § 1957 addresses transactions involving criminally derived property exceeding $10,000 in value. As originally enacted, neither section included a conspiracy provision. Accordingly, the Government relied on the general conspiracy statute, 18 U. S. C. § 371, to prosecute conspiracies to commit the offenses set forth in §§ 1956 and 1957. In 1992, however, Congress enacted the money laundering conspiracy provision at issue in these cases, now codified at 18 U. S. C. § 1956(h). See Annunzio-Wylie Anti-Money Laundering Act, Pub. L. 102–550, § 1530, 106 Stat. 4066. Section 1956(h) provides: "Any person who conspires to commit any offense defined in [§ 1956] or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

In *Shabani*, we addressed whether the nearly identical language of the drug conspiracy statute, 21 U. S. C. § 846, requires proof of an overt act. See *ibid.* ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy"). We held that it does not, relying principally upon our earlier decisions in *Nash* v. *United States*, 229 U. S. 373 (1913), and *Singer* v. *United States*, 323 U. S. 338 (1945). See *Shabani, supra,* at 13–14. In each of those cases, the Court held that, where Congress had omitted from the relevant conspiracy provision any language expressly requiring an overt act, the Court would not read such a requirement into the statute. See *Singer, supra,* at 340 (Selective Training and Service Act of 1940); *Nash, supra,* at 378 (Sherman Act).

As we explained in *Shabani*, these decisions "follow the settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms. See *Molzof* v. *United States*, 502 U. S. 301, 307–308 (1992). We have consistently held that the common law understanding of conspiracy 'does not

make the doing of any act other than the act of conspiring a condition of liability.'" 513 U. S., at 13–14 (quoting *Nash, supra,* at 378). In concluding that the drug conspiracy statute in *Shabani* did not require proof of an overt act, we found instructive the distinction between that statute and the general conspiracy statute, § 371, which supersedes the common law rule by expressly including an overt-act requirement. 513 U. S., at 14. See 18 U. S. C. § 371 ("If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, *and one or more of such persons do any act to effect the object of the conspiracy,* each shall be fined under this title or imprisoned not more than five years, or both" (emphasis added)).

*Shabani* distilled the governing rule for conspiracy statutes as follows: "'*Nash* and *Singer* give Congress a formulary: by choosing a text modeled on § 371, it gets an overt-act requirement; by choosing a text modeled on the Sherman Act, 15 U. S. C. § 1 [which, like 21 U. S. C. § 846, omits any express overt-act requirement], it dispenses with such a requirement.'" 513 U. S., at 14 (quoting *United States* v. *Sassi,* 966 F. 2d 283, 284 (CA7 1992)). This rule dictates the outcome in the instant cases as well: Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction.

### III

Petitioners argue that the rule that governed *Shabani* is inapplicable here, because § 1956(h) does not establish a new conspiracy *offense;* rather, they say, it merely increases the *penalty* for conviction of a money laundering conspiracy under § 371. In other words, as we understand their argument, petitioners contend that the Government must continue to prosecute money laundering conspiracies under § 371, but that § 1956(h) now provides enhanced penalties for

conviction. Since § 371 contains an overt act requirement, the argument goes, the Government must prove an overt act in prosecutions *ostensibly* brought under § 1956(h). This reading of § 1956(h) is untenable for two principal reasons. First, petitioners concede—as they must—that § 1956(h)'s text is sufficient to establish an offense. Indeed, its language is nearly identical to the drug conspiracy statute at issue in *Shabani*, which indisputably created an offense. Second, petitioners apparently read § 1956(h) to supply an enhanced penalty *for violation of § 371* in cases where the object of the conspiracy is to violate the substantive money laundering offenses in §§ 1956(a) and 1957. But the text of § 1956(h) fails to provide any cross-reference to § 371. Mere use of the word "conspires" surely is not enough to establish the necessary link between these two separate statutes. In short, if Congress had intended to create the scheme petitioners envision, it would have done so in clearer terms.

Petitioners seek support for their construction of § 1956(h) in the provision's legislative history. They contend that this history contains no indication that Congress meant to create a new offense or to eliminate the pre-existing overt-act requirement for money laundering conspiracy prosecutions that hitherto had been brought under § 371. They say that the history instead shows that § 1956(h) was intended only to raise the penalty for money laundering conspiracy from the 5-year maximum sentence under § 371 to the greater maximums available for substantive money laundering offenses under §§ 1956(a) and 1957. Petitioners also point out that, when Congress enacted § 1956(h), it did so under the title "*Penalty* for Money Laundering Conspiracies," 106 Stat., at 4066 (emphasis added). Had Congress wanted to enact an "offense" provision, they argue, it would have titled it accordingly.

Because the meaning of § 1956(h)'s text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history. But even were we to do so,

we would reach the same conclusion. It is undisputed that Congress intended § 1956(h) to increase the penalties for money laundering conspiracies. The provision's text makes clear that Congress did so precisely by establishing a new offense. Given the clarity of the text, mere silence in the legislative history cannot justify reading an overt-act requirement, or a cross-reference to § 371, into § 1956(h). See, e. g., *United States* v. *Wells*, 519 U. S. 482, 496–497 (1997) (refusing to read a materiality element into the statute at issue based on silence in the legislative history); *Harrison* v. *PPG Industries, Inc.*, 446 U. S. 578, 592 (1980) ("[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute"). Nor do we find it significant that Congress chose to label § 1956(h) a "penalty" rather than an "offense" provision. See *Pennsylvania Dept. of Corrections* v. *Yeskey*, 524 U. S. 206, 212 (1998) ("'[T]he title of a statute . . . cannot limit the plain meaning of the text'"); *Castillo* v. *United States*, 530 U. S. 120, 125 (2000) (although "[t]he title of the entirety of § 924 is 'Penalties' . . . at least some portion of § 924 . . . creates, not penalty enhancements, but entirely new crimes").

Petitioners' legislative history argument is particularly inapt here, we might add, because Congress is presumed to have knowledge of the governing rule described in *Shabani.* While *Shabani* was decided two years after § 1956(h) was enacted, the rule it articulated was established decades earlier in *Nash* and *Singer.* These decisions establish a "formulary" that provides clear and predictable guidance to Congress. As the Government points out, Congress has included an express overt-act requirement in at least 22 other current conspiracy statutes, clearly demonstrating that it knows how to impose such a requirement when it wishes to do so. See Brief for United States 11, and n. 5 (citing statutes). Where Congress has chosen *not* to do so, we will

not override that choice based on vague and ambiguous signals from legislative history.

We conclude by addressing two arguments raised by petitioners relating to the text and structure of § 1956 as a whole. First, petitioners note that Congress placed each of the three substantive money laundering offenses in § 1956 under subsection (a). Had the drafters intended § 1956(h) to create a new offense, petitioners contend, they would have placed it with the other offenses in subsection (a) instead of in its own separate subsection. We fail to see why that should be so. The three offenses placed in subsection (a) share a common feature: All are *substantive* money laundering crimes. We find nothing remarkable in Congress' decision to place a qualitatively different *conspiracy* offense provision in a separate subsection.

Petitioners' second textual argument is based on § 1956(i) (2000 ed., Supp. II), a venue provision added to the statute in 2001. See USA PATRIOT ACT, Pub. L. 107–56, § 1004, 115 Stat. 392. Section 1956(i)(2) (2000 ed., Supp. II) provides that "[a] prosecution for an attempt or conspiracy offense under [§ 1956 or § 1957] may be brought in the district where venue would lie for the completed offense under [§ 1956(i)(1)], or in any other district where an act in furtherance of the attempt or conspiracy took place." Petitioners contend that, by setting venue in the district where an overt act took place, Congress confirmed what (petitioners say) was the majority view of the Courts of Appeals at the time of § 1956(i)'s enactment: that proof of an overt act was required under § 1956(h). Moreover, petitioners argue, setting venue where an overt act took place makes little sense if such an act is not an element of the offense.

This argument fails for several reasons. As a preliminary matter, petitioners assume that § 1956(i) is the sole provision setting venue in money laundering conspiracy prosecutions. Although we need not definitively construe that provision here, we note that its language appears permissive rather

than exclusive—§ 1956(i) says a conspiracy prosecution *"may be brought"* in a district meeting the specified criteria. (Emphasis added.) This suggests that the provision serves to supplement, rather than supplant, the default venue rule: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. Rule Crim. Proc. 18. For a conspiracy prosecution under the common law rule, the district in which the unlawful agreement was reached would satisfy this default venue rule. See *Hyde* v. *Shine*, 199 U. S. 62, 76 (1905).

But even if we assume, for the sake of argument, that § 1956(i) is an exclusive venue provision, petitioners' argument still fails. The provision authorizes two alternative venues for money laundering conspiracy prosecutions: (1) the district in which venue *would* lie *if* the completed substantive money laundering offense had been accomplished, *or* (2) any district in which an overt act in furtherance of the conspiracy was committed. The first venue option clearly does not require that any overt act have been committed, and the Government therefore need not allege or prove such an act for venue to be properly established under this portion of § 1956(i). As to the second venue option, this Court has long held that venue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense. See, *e. g., United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 252 (1940); *United States* v. *Trenton Potteries Co.,* 273 U. S. 392, 402–404 (1927). In light of this longstanding rule, § 1956(i)(2)'s authorization of venue in a district where an overt act took place cannot be taken to indicate that Congress deemed such an act necessary for conviction under § 1956(h). Instead, Congress appears merely to have confirmed the availability of this alternative venue option in money laundering conspiracy cases.

\* \* \*

For the reasons set forth above, we hold that conviction for conspiracy to commit money laundering, in violation of 18 U. S. C. § 1956(h), does not require proof of an overt act in furtherance of the conspiracy. Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*