UNITED STATES of America,
Appellee,

v.

EVERGREEN INTERNATIONAL,
First Equity Enterprise, Forex International, Andrei B. Koudachev, Sergei
Habarov, Justin Fauci, Mamed Mekhtiev, Peter Papaemmanuel, Brian Pasqualini, Defendants,

Polina Sirotina, Philip Levenson,
Albert Guglielmo, Defendants–
Appellants.

No. 04–2987–cr(L).

United States Court of Appeals,
Second Circuit.

Nov. 21, 2006.

Nathan Z. Dershowitz and Victoria B. Eiger, Dershowitz, Eiger & Adelson, New York, New York, for Polina Sirotina.

Jeremy Gutman, New York, New York, for Philip Levenson.

Louis R. Aidala, New York, New York, for Albert Guglielmo.

Cynthia M. Monaco and Matthew L. Levine, Assistant United States Attorneys (Barbara D. Underwood, of counsel; Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, on the brief), United States Attorney's Office for the Eastern District of New York, New York, New York, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. WALKER, Circuit Judge, Hon. SANDRA DAY O'CONNOR,* Associate Justice Retired.

### SUMMARY ORDER

Defendants Polina Sirotina, Albert Guglielmo and Philip Levenson appeal their convictions and sentences for conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (Count One), mail fraud in violation of 18 U.S.C. § 1341 (Count Two), and money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count Four), entered by the District Court for the Eastern District of New York (Amon, J.).

---

* The Honorable Sandra Day O'Connor, Associate Justice Retired of the Supreme Court of the United States, sitting by designation.

Defendants challenge their convictions as based on insufficient evidence, improper jury instructions, and the admission into evidence of a co-conspirator's plea allocution. Various challenges are raised to their sentences. The parties' familiarity is assumed as to the background facts, the procedural history, and the specification of issues on appeal.

■ *Sufficiency: Mail Fraud.* Defendants do not contest the existence of the fraud, but rather their knowledge of the true destination of clients' funds. The record supports these convictions.

As to Sirotina: she helped set up First Equity, the supposed clearing firm, because as one witness put it, she thought it would "look better and was more secure" for customers; she directly controlled the nominal head of First Equity; she authorized an Evergreen employee to falsely represent himself as a director of First Equity in order to procure an account at the National Bank of Australia; she told outside counsel that First Equity was "independent"; she directed an employee to establish a trading agreement between Evergreen and Forex, and to cover his tracks afterward; and she established a clearing agreement between Evergreen and First Equity which required customers to open accounts at First Equity.

As to Guglielmo: he disseminated false and doctored reference letters in order to make Evergreen seem a legitimate firm; he attended client meetings designed to substitute a more mature employee for the callow cold-caller who communicated with the client by phone; and he was aware of Evergreen's ties to the allegedly independent clearing firm, First Equity.

As to Levenson: he assisted in altering reference letters; he drafted letters to clients (explaining Evergreen's commission structure) which the district court determined were "misleading"; he ordered the head of First Equity to use Levenson's copies of trading records in order to generate statements purportedly reconciling Evergreen's trades; he generated interim account information from his own desktop in response to client requests; and he falsely represented to a potential landlord that a separate firm he controlled, "Levco, Inc.," had audited Evergreen.

■ Defendants challenge the government's reliance on evidence that they knew about misrepresentations of stop-loss protection and failed to take affirmative steps to end them. Whether or not the government was entitled to rely on such evidence, the district court precluded the jury from convicting on Count Two using anything other than a "particular pretense, misrepresentation or promise made about a material fact [ ] made or caused to be made by the defendant." To this end, there was sufficient evidence of defendants' affirmative acts in support of the mail fraud.

■ Defendants contend that they lacked fraudulent intent because they believed they were helping investors. This argument is without merit: "[w]here the false representations are directed to the quality, adequacy or price of the goods themselves, the fraudulent intent is apparent because the victim is made to bargain without facts obviously essential in deciding whether to enter the bargain." *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir.1970).

Viewed in the light most favorable to the government, the evidence was sufficient for a rational juror to convict all three defendants on mail fraud and conspiracy to commit mail fraud. These convictions are therefore affirmed.

*Sufficiency: Money Laundering Conspiracy.* Money laundering conspiracy consists of conspiring to "transport, transmit, or transfer . . . a monetary instrument or funds from a place in the United States to or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2) & (a)(2)(A); *see also* § 1956(h). Here, the government must prove [i] that defendants conspired to transfer funds to Forex's accounts in Europe and [ii] thereby intended to promote the underlying unlawful activity, as it was charged to the jury: defrauding investors by means of misrepresentations. The government argues that such intent is evidenced either by promotion of the continuation of the fraud or by doing something essential to the completion of the scheme.

■ As to Sirotina, there was sufficient evidence. She does not dispute that she agreed to send funds to Forex. Further, given the ample support for the district court's determination that Sirotina was aware that no trading was going on between Evergreen and Forex, the jury could have inferred that she transferred the funds knowing that they would be misappropriated by her boss, Koudachev, who would in turn keep her employed running the boiler room that attracted the funds in the first place. Her conviction for money laundering conspiracy is therefore affirmed.

■ As to Guglielmo and Levenson, however, even assuming *arguendo* that they played a role in the transfers to Forex, there was insufficient evidence that in doing so they intended to promote the mail fraud, *i.e.* defrauding investors using misrepresentations, and their convictions must therefore be reversed.

The district court concluded that Guglielmo and Levenson "had no reason to believe" that "the trading was a fake." That would negative any intent to transfer the funds in order to help steal them. The district court relied on the fact that two of the government's cooperating witnesses "were in as good or better a position to know the trading was fake" but nevertheless testified that they were unaware of the sham trading. The government points to circumstantial evidence purporting to demonstrate that Guglielmo and Levenson were in fact in a better position to learn of the sham. The tenuous nature of that evidence confirms the district court's observation.

The government offers an alternative basis for intent: Guglielmo and Levenson helped transfer the funds to Forex in order to perpetuate the notion that Evergreen was trading them. This alternative does not avail the government, because there is no evidence that customers were ever told that their funds were being transferred to Forex; the government contended at trial that the transfers were concealed, and that investors were told that their money was safe at Chase bank; expert testimony suggested that parties trading in foreign currency do not actually deliver to their counterpart the amount being traded; and it is hard to see why investors who were assured that their money was safe in New York would be lulled into complacency by the thought that it was being transferred abroad.

At oral argument, the government sought to link defendants' misrepresentations to the ultimate theft by reference to Mamed Mekhtiev, a co-defendant who fled before sentencing. The theory is that Mekhtiev allegedly met with investors to keep them apprised, and likely used fake trading slips (found in his office) to suggest that trading was taking place. How-ever, assuming *arguendo* that Mekhtiev can now be cast in this role, the government's concession at argument that the use of Forex was never revealed to investors breaks any link between Mekhtiev's acts and the transfer of funds abroad.

Guglielmo and Levenson's money laundering conspiracy convictions are therefore reversed.

■ *Jury Instruction on Conspiracy.* Defendants argue that the district court failed to distinguish the broad conspiracy charged in the indictment from the narrow one sent to the jury. The district court instructed the jury:

> [H]as the government proved the existence of an agreement having the singular purpose charged in Count One; namely, to defraud Evergreen's investors and to obtain money and property from Evergreen's investors by means of materially false representations . . .

The district court's recitation of the relevant language in the indictment at the outset of the instruction narrowed the jury's focus to the misrepresentation conspiracy, its appropriate inquiry. Further, the district court omitted from the jury's consideration the twenty-fourth paragraph of the indictment, which alleged that funds were transferred to Europe to "make payments to senior Evergreen employees." The instruction therefore was not in error.

■ Defendants contend that the district court erred in refusing their request to charge the jury on a defense theory for which there was a basis in the record-that "there was [no] single conspiracy that embraced both" the misrepresentations and the misappropriation of the funds. The district court only charged the jury on the first of these conspiracies, so charging on a defense that applied only to both together was not warranted.

■ Finally, defendants argue that the instruction resulted in constructive amendment of the indictment. However, there is no constructive amendment where, as here, "a generally framed indictment encompasses the specific legal theory or evidence used at trial." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003).

■ *Jury Instruction on Fraud by Omission.* Levenson argues that the jury should have been instructed on fraud by omission because the government was allegedly "unable to point to any misrepresentation that was knowingly made or caused by [him]," and instead implied that it was Levenson's failure to act which made him culpable in the fraud. The district court, however, found sufficient evidence of Levenson "conspiratorially aiding and abetting the affirmative false representations being made." Moreover, the district court was concerned that the requested instruction would inappropriately give the government a basis for arguing fraud by omission.

Levenson submits that the government nevertheless argued fraud by omission to the jury by citing Levenson's failure to prevent the stop-loss letters from going out, his failure to reveal to a customer that her money was never coming back from Europe, and his role in the misleading commissions letter. However, that some of the evidence demonstrated Levenson's "failures to act" does not render the affirmative misrepresentations made by his coconspirators a "fraud by omission." When viewed in light of Levenson's role in falsifying trading histories, these failures to act were a legitimate basis for the jury to conclude that he was complicit in the affirmative misrepresentations.

To the extent that prosecutors emphasized Levenson's inaction, we presume the jury to have considered such evidence in the context of the district court's instructions: [i] on mail fraud, to rely on nothing other than a "particular pretense, misrepresentation or promise made about a material fact [ ] made or caused to be made by the defendant," and [ii] on conspiracy to commit mail fraud, that "mere knowledge of, or acquiescence without participation in, the unlawful plan is not sufficient to prove membership" in a conspiracy. We therefore need not reach Levenson's contention that he owed investors no duty to disclose.

*Jury Instruction on Money Laundering.* Defendants argue that the district court failed to instruct the jury that an overt act is required for a money laundering conspiracy. This argument has since been foreclosed by *Whitfield v. United States*, 543 U.S. 209, 214, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005).

■ *Jury Instruction on Intent to Harm.* Guglielmo challenges the district court's charge that "intent to harm . . . can be inferred from exposure to potential loss." He cites our holding that "it is not sufficient that defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victim." *United States v. Gabriel*, 125 F.3d 89, 97 (2d Cir.1997), *abrogated on other grounds* by *Arthur Andersen LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129, 161 L.Ed.2d 1008 (2005), as recognized in *United States v. Quattrone*, 441 F.3d 153, 176 (2d Cir. 2006). Here, however, Guglielmo had more than a "realization" of the fraud: he was an active participant in it.

■ *Admissibility of the Fauci Allocution:* Defendants argue that the admission of the plea allocution of Justin Fauci, a coconspirator, violated their Sixth Amendment right to confront witnesses under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Al-

though the admission of Fauci's allocution did transgress *Crawford,* the error was harmless. *See United States v. Goldstein,* 442 F.3d 777, 784 (2d Cir.2006). Defendants' argument that the error is structural is foreclosed by *United States v. McClain,* 377 F.3d 219 (2d Cir.2004).

Fauci pled guilty to mail fraud and mail fraud conspiracy, and allocuted that he "participated *along with other Evergreen brokers* in making false representations to customers and potential customers." Sirotina relies on a single subsequent phrasing in the allocution: *"I and others* learned that First Equity was created by Andrei Koudachev and its only customer was Evergreen." At most, this was a *de minimis* deviation from the formulaic recitation (repeated six times in the allocution), "I and other brokers."

In any case, the district court instructed the jury (both when the evidence was introduced and in its charge) that the allocution was not determinative of defendants' *participation* in the fraud conspiracy, only of its existence. None of the defendants contested the existence of a conspiracy; rather, their defense was that they had been unaware of it. (Sirotina's counsel: "oddly enough there is not going to be a contest whether or not there was a fraud."); (Guglielmo's counsel: "he wasn't in charge of those 100 or so brokers who were calling people and all."); (Levenson's counsel: "there's no question there was a fraud.").

Read (as it must be) in the context of the district court's limiting instruction and defendants' trial presentation, the admission of Fauci's allocution was harmless error.

*Sentencing.* In light of our reversal of Guglielmo and Levenson's convictions for money laundering conspiracy, their sentences are vacated and remanded; we take up their sentencing challenges only for the district court's consideration when it resentences. We affirm Sirotina's sentence in all respects; as she did not seek a sentencing remand on the contingency that her convictions would be affirmed, we decline to grant one.

 The district court enhanced Sirotina's offense level by three for her role as a "manager" of the fraud. U.S.S.G. § 3B1.1(b). Sirotina argues that she was the office manager of the business enterprise, not of the criminal enterprise. This contention is without merit, and the enhancement did not constitute an abuse of discretion.

The district court enhanced Sirotina and Guglielmo's offense level by two for "abuse of trust." *Id.* § 3B1.3. Whether they occupied and abused positions of trust is a legal question we review *de novo. United States v. Broderson,* 67 F.3d 452, 455 (2d Cir.1995).

 Sirotina argues that those who manage a fraudulent enterprise but lack direct contact with the victims cannot have abused their victims' trust. This contention is without merit. Sirotina cites *Broderson,* but in that case, we rejected the enhancement for an executive who had failed to make statutorily mandated disclosures in contract negotiations with the government, and we did so because the defendant's relationship with his counterparty was arm's-length in nature. By contrast, Sirotina perpetuated the appearance of legitimacy of a company which was designed precisely to induce the trust of its victims.

 Guglielmo relies on *United States v. Jolly,* 102 F.3d 46 (2d Cir.1996), which rejected the enhancement for the head of a company that used investors' money for personal expenses. Our rationale was that there was no "relationship with particular

investors in which Jolly occupied a position of influence beyond that enjoyed by garden-variety borrowers." *Id.* at 49. Guglielmo, by contrast, was part of a scheme which involved precisely such a relationship. And he had direct contact with victims at a client lunch used to conceal a broker's identity. In any event, as the district court correctly intuited, "is it only the broker or is it the person who runs the brokerage house and is responsible for these representations having been made?"

■ Guglielmo sought a "minimal role" downward adjustment for his mail fraud convictions, U.S.S.G. § 3B1.2(b), because "his overall participation in the workings of Evergreen was limited." Assuming *arguendo* that his role was in fact so limited, a role reduction is not "available simply because the defendant played a lesser role than his coconspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime." *United States v. Rahman,* 189 F.3d 88, 159 (2d Cir.1999) (per curiam). The district court found that "it can't be said that he was less culpable than most other participants," and therefore did not abuse its discretion in denying the adjustment.

■ Levenson challenges the district court's refusal to grant him a downward departure for his allegedly "minor role" in the fraud. U.S.S.G. § 3B1.2(b). He bases the challenge on the fact that "his role differed little from that of Evergreen's secretarial and support staff." This argument lacks record support. Levenson argues in the alternative that he played no role in the ultimate misappropriation of the funds; given that the misappropriation is *not* part of the conspiracy in which he was found to have participated, this argument is also without merit. The district court therefore did not abuse its discretion in denying the role adjustment.

■ Levenson's offense level was enhanced by 17 based on his responsibility for the entire amount of loss caused to Evergreen investors, which was at least 40 million dollars. U.S.S.G. § 2F1.1 (b)(1)(R) (2000). Levenson argues that in addition to a finding of foreseeability of the loss, the district court was required to make a "particularized finding of the scope of the criminal activity agreed upon by" him. *See United States v. Studley,* 47 F.3d 569, 574 (2d Cir.1995).

In making the enhancement, the district court stated: "People can understand when lies are being made and this is the kind of operation that it is entirely likely ... in a volatile spot market, that all the money is going to be lost." Yet given the narrow, misrepresentation-based conspiracy that was charged to the jury, application of this enhancement on remand will depend on particularized findings as to [i] whether Levenson was aware that the investment he helped sell to Evergreen's customers was less secure than represented and [ii] whether Levenson intended to sell an investment so risky that total loss was foreseeable.

■ The district court enhanced Levenson's offense level by two levels for his use of "sophisticated means." U.S.S.G. § 2F1.1 (b)(6)(C) (2000). Levenson argues that he did not himself design the "sophisticated means" of the fraud. However, Levenson's de facto control over the trading records generated by the supposed independent clearance firm is sufficient basis for us to conclude that the district court did not abuse its discretion in applying this enhancement.

*Reasonableness.* The only sentence we affirm today is Sirotina's, and she does not challenge its reasonableness.

\* \* \*

We have considered all of defendants' remaining arguments and find them to be without merit. Defendant Sirotina's convictions and sentence are affirmed in their entirety; defendants Guglielmo and Levenson's convictions for money laundering conspiracy in violation of 18 U.S.C. § 1956(h) are vacated with direction to dismiss and resentence on the basis of the remaining convictions and in light of the sentencing rulings herein. The judgment of the district court is therefore affirmed in part, reversed in part, and in part vacated and remanded.