REYNA, Circuit Judge,
concurring-in-part, dissenting-in-part.
The majority concludes that the International Trade Commission lacks authority to find a violation of 19 U.S.C. § 1337 (“Section 337”) that is premised on induced infringement where “the acts of underlying direct infringement occur post-importation.” Maj. Op. at 1360. While I agree with the majority’s disposition of this case in all other respects, I cannot join my colleagues’ decision to negate the Commission’s statutory authority to stop induced infringement at the border. Accordingly, I respectfully concur-in-part and dissent-in-part.
I
This appeal arises out of an investigation into alleged violations of Section 337 by Suprema (a Korean company) and Menta-lix (located in Plano, Texas). Suprema manufactures fingerprint scanners that it imports and sells for importation[1] into the United States. To function, Suprema’s scanners must be connected to a separate computer running special software. Suprema does not make or sell this software, but provides Software Development Kits (SDKs) that allow its customers to create their own software to operate the scanners. The SDKs include utilities that operate various functionalities of the scanners, and also include manuals instructing customers on how to use the SDKs. Men-talix, one of Suprema’s customers in the United States, imports Suprema’s fingerprint scanners and sells the scanners after importation, along with software to operate the scanners. Mentalix’s software uses some of the functions included in Suprema’s SDKs.
As relevant here, the Commission found that Suprema’s scanners, when used with Mentalix’s software, practice a patented method for capturing and processing fingerprints. The Commission found Mentalix liable for direct infringement for integrating its software with Suprema’s scanners and using the integrated scanners in the United States. The Commission also found that Suprema actively aided and abetted Mentalix’s in *1372 fringement by collaborating with Mentalix to import the scanners and helping Men-talix adapt its software to work with the imported scanners to practice the patented method. Finding that Suprema willfully blinded itself to the existence of the patent and the infringing nature of the activities it encouraged, the Commission held Suprema liable for induced infringement under 35 U.S.C. § 271(b). Accordingly, the Commission issued a limited exclusion order banning from entry into the United States articles imported by Supre-ma or Mentalix that infringe the patented method. See Certain Biometric Scanning Devices, Components Thereof, Associated Software, and Products Containing Same, USITC Inv. No. 337-TA-720, Pub. No. 4366, Limited Exclusion Order ¶ 1 (Feb.2013).
II
Instead of addressing the merits of the Commission’s determination of induced infringement, the majority takes the unnecessary step of addressing the legality of the Commission’s authority to conduct a Section 337 investigation that is based on allegations of induced infringement. The majority concludes that the Commission did not have authority to issue an exclusion order in this case because “the statutory grant of authority in § 337 cannot extend to the conduct proscribed in § 271(b) where the acts of underlying direct infringement occur post-importation.” Maj. Op. at 1360. According to the majority, the phrase “articles that — infringe” in Section 337 requires infringement at the time of importation, and because inducement is not “completed” until there has been direct infringement, the Commission may not invoke inducement to ban the importation of articles that are not already in an infringing state at the time of importation. See id. at 1360-61,1362-63.
My problem with the majority’s opinion is that it ignores that Section 337 is a trade statute designed to provide relief from specific acts of unfair trade, including acts that lead to the importation of articles that will result in harm to a domestic industry by virtue of infringement of a valid and enforceable patent. To negate both a statutory trade remedy and its intended relief, the majority overlooks the Congressional purpose of Section 337, the long established agency practice by the Commission of conducting unfair trade investigations based on induced patent infringement, and related precedent by this Court confirming this practice. In the end, the majority has created a fissure in the dam of the U.S. border through which circumvention of Section 337 will ensue, thereby harming holders of U.S. patents.
A
For decades, the Commission has entertained complaints and found Section 337 violations where respondents actively induced direct infringement in the United States, infringement that did not occur until after importation of the articles involved.[2] This Court has affirmed Com *1373 mission determinations of Section 337 violations that are premised on induced infringement.[3] Other decisions of this Court, while not affirming an exclusion order, recognized the Commission’s authority to premise a Section 337 violation on a finding of induced infringement.[4] This rich history of longstanding agency practice and legal precedent is fruit borne of law enacted by Congress precisely to address importation of infringing articles by establishing relief at the point of importation, the border.
This Court has long recognized the Congressional purpose of Section 337 is to provide “meaningful relief available to pat-entees by enabling the ITC to issue exclusion orders to stop infringement at the border.” John Mezzalingua Assoc., Inc. v. Int’l Trade Comm’n, 660 F.3d 1322, 1340 (Fed.Cir.2011) (emphasis added). As originally enacted, Section 337 authorized the Commission to investigate unfair acts or practices in the importation of articles, including those related to infringement of U.S. patents, and placed on the President *1374 the authority to exclude such articles at the border. See Tariff Act of 1930, ch. 497, Title III, § 337, 46 Stat. 703 (1930).[5] In 1974, Congress expanded the Commis-sioris authority by amending Section 337 to allow the Commission, itself, to order the exclusion of articles involved in unfair acts and practices. See Trade Act of 1974, ch. 4, Title III, § 341, 88 Stat.1978 (1975). In 1988, with the intention to provide a “more effective remedy for the protection of U.S. intellectual property rights,” Congress eliminated, with respect to investigations involving certain intellectual property rights, the domestic injury requirement contained in the prior version of Section 337. See S.Rep. No. 100-71, at 127-29 (1987); H.R.Rep. No. 100-40, pt. 1, at 154-56 (1987). Congress thus strengthened the role of the Commission in preventing unfair foreign competition by providing a more effective enforcement mechanism at the border. At no point in the Congressional development of Section 337 was the Commission’s authority limited to only certain acts or practices that constitute infringement. Stated differently, the statute on its face authorizes the Commission to investigate all unfair acts or practices related to importation that are harmful to U.S. trade via infringement of a U.S. patent. There is no indication that Congress intended to prohibit the Commission from investigating acts of inducement leading to infringement. Had Congress intended such limitation, it would have amended Section 337 to so require. See generally Whitfield v. United States, 543 U.S. 209, 214, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005) (“[I]f Congress had intended to create the scheme petitioners envision, it would have done so in clearer terms.”).
The Commission’s broad authority derives from the nature of the relief it is intended to provide. Exclusion at the border (and, in some cases, a cease and desist order directed at infringing articles already imported) is the only form of relief available in a Section 337 investigation. In this manner, Section 337 not only supplements the patent infringement remedies available in federal courts, it also provides a unique form of relief in patent law: preventing unfairly traded articles from entering the U.S. customs territory. Congress provided this broad remedy because it recognized that “[t]he importation of any infringing merchandise derogates from the statutory right, diminishes the value of the intellectual property, and thus indirectly harms the public interest.” H.R.Rep. No. 100-40, at 154, 156. In other words, imported articles involved in unfair acts of infringement inflict injury on the U.S. industry and patent holders simply by virtue of importation, apart from any acts occurring after importation. Under Section 337, once the unfairly traded article is imported, the harm is done.
B
The majority justifies a narrow reading of Section 337 by finding that proceedings at the Commission are focused “on the infringing nature of the articles at the time of importation, not on the intent of the parties with respect to the imported goods.” Maj. Op. at 1358. The majority misunderstands the in rem nature of proceedings at the Commission. Because the Commission has in rem jurisdiction over articles sold for importation, imported or sold after importation into the United States, it has the authority to exclude products intended to be sold or imported *1375 in the future by virtue of Congress’s delegation of its power to regulate commerce with foreign nations and exclude unfairly traded merchandise from entry into the United States. See Buttfield v. Stranahan, 192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525 (1903). Thus, at least one instance of sale for importation, importation or sale after importation is required, and sufficient, to trigger the Commission’s jurisdiction to investigate an alleged violation of Section 337. See, e.g., Certain Trolley Wheel Assemblies, USITC Inv. No. 887-TA-161, Pub. No. 1605 (Nov. 1984), Comm’n Op. at 8, 0084 WL 951859, at *4 (Aug. 29, 1984). But the Commission’s authority to issue an exclusion order is more than in rem in nature because it incorporates an “in personam element,” see Kyocera Wireless Corp. v. Int’l Trade Comm’n, 545 F.3d 1340, 1357 (Fed.Cir.2008), and is directed at future imported articles. Hence, the Commission’s “focus” on articles is perfectly consistent with exclusion orders preventing future importation (and, in the case of inducement, future direct infringement) based on demonstrated instances of inducement and direct infringement in the United States.
Thus, while the Commission examines articles as they are imported to determine which infringement theory applies, it is not constrained by a requirement that the articles be in an infringing state when imported. Section 337 expressly applies not only to the moment of importation, but also, in the alternative, to sales occurring before and after importation that can give rise to infringement liability. An article that is not in an infringing state at the moment of importation can still form the basis of a Section 337 violation if its importation is tied to conduct giving rise to infringement liability.
The majority engages in protracted analysis to arrive at the view that 35 U.S.C. § 271(a) and (c) essentially define “articles that infringe” for purposes of Section 337 liability. See Maj. Op. at 1360-61. According to the majority, inducing conduct does not “become tied” to an article until the underlying direct infringement happens. See id. I disagree. To the extent that the induced direct infringement involves an article, the inducing acts are tied to such an article at the time each act of inducement occurs. For purposes of Section 337, as long as the inducing acts include sale for importation, importation or sale after importation of articles involved in direct infringement in the United States, the inducing conduct is tied to “articles — that infringe” and the Commission has authority to investigate such conduct.
Contrary to the majority’s holding, the reference in Section 337 to “articles — that infringe” does nothing to exclude induced infringement from the type of unfair acts Section 337 was designed to remedy. Section 337 is defined, much like § 271, in terms of conduct that may occur before and after the precise moment of importation. Because Section 337 is not by its terms confined to a specific time when the imported articles must “infringe,” the majority errs in using § 271(a) and (c) to introduce a strict temporal limitation on the moment on which infringement liability must be “complete” for purposes of the Commission’s authority to remedy violations of Section 337.
Ill
I perceive the majority’s holding in this case as enabling circumvention of the legitimate legislative objective of Section 337 to stop, at the border, articles involved in unfair trade. First, the majority’s holding allows importers to circumvent Section 337 liability for indirect infringement. For example, an importer could import disassembled components of a patented machine, or *1376 import an article capable of performing almost all of the steps of a patented method, but reserve final assembly of the last part or performance of the last step for the end-user in the United States and, under the majority’s holding, fall outside the Commission’s statutory reach because direct infringement would not have occurred until after importation. Yet, this Court has recently recognized that “there is no reason to immunize the inducer from liability for indirect infringement simply because the parties have structured their conduct so that no single defendant has committed all the acts necessary to give rise to liability.” Akamai Techs., Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1309 (Fed.Cir.2012) (en banc). Likewise, an importer inducing infringement should not be able to escape liability by delaying direct infringement until after importation. The fact remains that “one who aids and abets an infringement is likewise an in-fringer.” H.R.Rep. No. 82-1923, at 9 (1952). Section 337 should not be interpreted in a manner that enables this form of circumvention.
Second, the majority’s holding allows importers to circumvent Section 337 liability for almost all forms of method patent infringement not involving product-by-process claims.[6] The Commission already declines to entertain complaints based on allegations of direct infringement of method claims under § 271(a), recognizing that a patented method is only infringed by “use” in the United States, which is not one of the types of conduct proscribed in Section 337. See Certain Electronic Devices, Inv. No. 337-TA-724, Comm’n Op. at 18-19, 2012 WL 3246515, at *12-13 (Dec. 21, 2011); 19 U.S.C. § 1337(a)(l)(B)(i) (making unlawful only the “importation,” “sale for importation,” and “sale within the United States after importation” of infringing articles). Given this existing limitation, the ability to file a Section 337 complaint based on theories of indirect infringement becomes even more important for owners of patented processes. But the majority now eliminates § 271(b) as a basis for finding a Section 337 violation, leaving only the possibility of enforcing method patents at the Commission under § 271(c) to the extent that the imported articles are especially made or adapted for use in practicing a patented method and are not capable of substantial noninfringing uses. Whether obtaining a remedy for this form of method patent infringement continues to be viable at the Commission remains to be seen, in light of the majority’s broad holding that “there are no ‘articles ... that infringe’ at the time of importation when direct infringement has yet to occur.” Maj. Op. at 1352.[7]
The majority’s view also overlooks the practical realities of international trade. A common threat to trade relief in general is the modification of articles to place them outside the scope of relief orders, e.g., exclusion or antidumping orders. These circumvention practices can be sophisticated and elaborate. Here, the majority le *1377 galizes the most common and least sophisticated form of circumvention, importation of the article in a disassembled state. The idea is that assembly within the United States removes the article from scrutiny and enforcement at the border. With regard to importation of articles whose assembly in the United States creates “articles — that infringe,” while it is true that the patent holder may be able to sue in district court, it would likely face personal jurisdiction and enforcement of judgment hurdles, and would certainly not be able to stop importation of the disassembled articles at the border. If anything, the majority’s holding creates a new threat for U.S. patent holders.[8]
In my view, Section 337 was intended to provide distinct relief at the border to stop imports of articles that are used in unfair trade. I see no rational reason why this form of relief to U.S. patent holders should be eliminated when acts of inducement are involved. For purposes of Section 337 liability, I see no distinction between importing an article that meets all limitations of an apparatus claim as it crosses the border, and actively inducing infringement by importing an article and encouraging another to use that article to practice a patented method. In both cases, a patented invention is practiced within the country without authority as a result of importation. The majority is apparently concerned with the possibility that this interpretation could result in overbroad remedial orders that exclude articles that may or may not later give rise to direct infringement depending on the intent of the importer. See Maj. Op. at 1362-63. But the Commission regularly includes a “certification provision” in its exclusion orders by which importers may certify that the articles they seek to import do not infringe and are therefore not covered by the order. For example, the limited exclusion order issued against Suprema and Mentalix provides that “persons seeking to import biometric scanning devices ... potentially subject to this Order may be required to certify that ... to the best of their knowledge and belief, the products being imported are not excluded from entry under paragraph 1 of this Order.” Certain Biometric Scanning Devices, Limited Exclusion Order ¶ 3. I view the Commission as an international trade agency with the expertise and experience to fashion exclusion orders of appropriate scope.
In an appeal involving trade secret misappropriation, we recently held that the Commission may consider conduct abroad in determining whether imports related to that conduct violate Section 337. See Ti-anRui Grp. Co. v. Int’l Trade Comm’n, 661 F.3d 1322, 1331-32 (Fed.Cir.2011). Just as the panel in TianRui deemed it highly unlikely that Congress intended Section 337 not to reach instances in which the accused party was careful to ensure that the actual act of conveying the trade secret occurred outside the United States, I believe it is equally unlikely that Congress intended that Section 337 would not reach instances in which a respondent is careful to ensure that the actual act of direct infringement does not occur until the imports have entered the customs territory of the United States. The majority *1378 errs in concluding otherwise. Therefore, I must dissent-in-part.

. The parties stipulated that Suprema imported and sold for importation at least one unit of each accused scanner, and that Mentalix imported and sold after importation at least one unit of each accused scanner. See Certain Biometric Scanning Devices, Components Thereof, Associated Software, and Products Containing Same, USITC Inv. No. 337-TA-720, Order No. 11, 2010 WL 4790344 (Sep. 16, 2010).

. See, e.g., Certain Inkjet Ink Cartridges with Printheads and Components Thereof, USITC Inv. No. 337-TA723, Pub. No. 4373 (Feb. 2013), Comm'n Notice at 3, 2011 WL 8883648 (Oct. 24, 2011), Initial Determination at 79, 2011 WL 3489151, at *49 (Jun. 10, 2011); Certain Digital Set-Top Boxes and Components Thereof, USITC Inv. No. 337-TA-712, Pub. No. 4332 (Jun.2012), Initial Determination at 132, 146, 2011 WL 2567284, at *76, *82 (May 20, 2011) (reconsideration granted on other grounds); Certain Optoelectronic Devices, Components Thereof, and Prods. Containing Same, USITC Inv. No. 337-TA-669, Pub. No. 4284 (Nov.2011), Initial Determination at 51, 2011 WL 7628061, at *45 (March 12, 2010), aff'd sub nom., Emcore Corp. v. Int’l Trade Comm'n, 449 Fed.Appx. *1373 918 (Fed.Cir.2011) (non-precedential); Certain Voltage Regulators, Components Thereof and Prods. Containing Same, USITC Inv. No. 337-TA-564, Pub. No. 4261 (Oct.2011), Enforcement Initial Determination at 38, 2011 WL 6980817, at *31 (Mar. 18, 2010) (violation of limited exclusion order based on inducement); Certain Semiconductor Chips Having Synchronous Dynamic Random Access Memory Controllers and Prods. Containing Same, USITC Inv. No. 337-TA-661, Pub. No. 4266 (Oct.2011), Initial Determination at 42, 2011 WL 6017982, at *85 (Jan. 22, 2010); Certain Digital Televisions and Certain Prods. Containing Same, USITC Inv. No. 337-TA-617, Comm’n Op. at 10, 2009 WL 1124461, at *5 (Apr. 23, 2009), aff'd in relevant part sub nom., Vizio, Inc. v. Int’l Trade Comm'n, 605 F.3d 1330 (Fed.Cir.2010); Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips, and Prods. Containing Same, USITC Inv. No. 337-TA-543, Pub. No. 4258 (Oct.2011), Initial Determination at 151, 2011 WL 6175074, at *83 (Oct. 10, 2006); Certain Foam Masking Tape, USITC Inv. No. 337-TA-528, Pub. No. 3968 (Dec.2007), Initial Determination at 14-15, 2007 WL 4824257, at *20 (Jun. 21, 2005); Certain Automated Mechanical Transmission Sys. for Medium-Duty and Heavy-Duty Trucks and Components Thereof, USITC Inv. No. 337-TA-503, Pub. No. 3934 (Aug.2007), Initial Determination at 154, 2007 WL 4473082, at *101 (Jan. 7, 2005); Certain Display Controllers and Prods. Containing Same, USITC Inv. No. 337-TA-491, Initial Determination, 2004 WL 1184745, at *116 (Apr. 14, 2004); Certain Hardware Logic Emulation Systems and Components Thereof, USITC Inv. No. 337-TA-383, Pub. No. 3154 (Jan. 1999), Comm’n Notice at 2 (Mar. 6, 1998), Initial Determination at 179, 1997 WL 665006, at *101 (Jul. 31, 1997); Certain Concealed Cabinet Hinges and Mounting Plates, USITC Inv. No. 337-TA289, Initial Determination, 1989 WL 608804, at *48, *52 (Sep. 28, 1989); Certain Minoxidil Powder, Salts and Compositions for Use in Hair Treatment, USITC Inv. No. 337-TA-267, 1988 WL 582867, at *6-7 (Feb. 16, 1988); Certain Molded-In Sandwich Panel Inserts and Methods for Their Installation, USITC Inv. No. 337-TA-99, Pub. No. 1246 (May 1982), Comm’n Op. at 8 (Apr. 9, 1982), aff'd sub nom., Young Eng’rs, Inc. v. Int’l Trade Comm'n, 721 F.2d 1305 (Fed.Cir.1983); Certain Surveying Devices, USITC Inv. No. 337-TA-68, Pub. No. 1085 (Jul.1980), Comm'n Determination at 19, 0080 WL 594364, at *10 (Jul. 7, 1980).

. See Vizio, 605 F.3d 1330 (affirming violation in Inv. No. 337-TA-617 based on induced infringement of method claim); Emcore, 449 Fed.Appx. 918 (affirming without opinion violation in Inv. No. 337-TA-669 based on induced infringement of apparatus claim); Young Eng’rs, 721 F.2d 1305 (affirming violation in Inv. No. 337-TA-99 based on contributory and induced infringement of process patents).

. See ERBE Elektromedizin GmbH v. Int'l Trade Comm’n, 566 F.3d 1028 (Fed.Cir.2009) (affirming finding of no direct infringement underlying inducement claims); Kyocera Wireless Corp. v. Int’l Trade Comm’n, 545 F.3d 1340 (Fed.Cir.2008) (reversing violation ruling after finding no intent to induce); Alloc, Inc. v. Int’l Trade Comm'n, 342 F.3d 1361 (Fed.Cir.2003) (affirming finding of no intent to induce).

. The provenance of Section 337 dates back as early as 1922. See Tariff Act of 1922, ch. 356, Tide II, § 316, 42 Stat. 943 (1922).

. Violations based on importation of articles manufactured abroad according to a patented process are separately codified in § 337(a)(l)(B)(ii), not at issue here.

. Although the majority indicates that the § 271(c) “standards for infringement” can be met at the time of importation, it also holds that inducement is not "completed” until there has been direct infringement. See Maj. Op. at 1360-61. Like inducement, liability for contributory infringement under § 271(c) requires a showing of direct infringement, which in the case of method claims will not occur until after importation. See, e.g., ERBE, 566 F.3d at 1037 (affirming Commission's finding of no contributory or induced infringement where there was no evidence of direct infringement of method claim in the United States).

. The majority believes that its holding will not have adverse effects on the Commission's statutory mandate to provide specific relief from unfair trade practices, and points to § 271(a) and § 271(c) as obviating any need for relief, at the border, from induced infringement. See Maj. Op. at 1361, n. 4. As this dissent demonstrates, that is not the case. But even if it were so, it is up to Congress, not this Court, to repeal the Commission’s mandate on grounds that sufficient relief is afforded elsewhere in the law.