GREGG COSTA, Circuit Judge,
specially concurring:
I fully join the majority opinion, which faithfully applies conspiracy case law interpreting the constitutional guarantee that an accused shall be tried “by an impartial jury of the state and district wherein the crime shall have been committed.” U.S. Const. Amend. VI. That precedent dates back more than a century to the Supreme Court’s decision in Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912).[1] That case was decided in an age with far more primitive interstate travel and far less expansive federal criminal law than today, yet Justice Holmes in dissent was able to foresee a case like this one:
Obviously the use of this fiction or form of words must not be pushed to such a point in the administration of the national law as to transgress the requirement of the Constitution that the trial of *325 crimes shall be held in the state and district where the crimes shall have been committed. Art. 3, § 2, cl. 3. Amendments, art. 6. With the country extending from ocean to ocean, this requirement is even more important now than it was a hundred years ago, and must be enforced in letter and spirit if we are to make impossible hardships amounting to grievous wrongs. In the case of conspiracy the danger is conspicuously brought out. Every overt act done in aid of it, of course, is attributed to the conspirators; and if that means that the conspiracy is present as such wherever any overt act is done, it might be at the choice of the government to prosecute in any one of twenty states in none of which the conspirators had been.
Id. at 386-87, 32 S.Ct. 793.
Although not reaching the twenty states of Holmes’s prediction, Zigler’s and Michael Piper’s drives from Indianapolis to the Dallas-Fort Worth metropolex created venue in this drug conspiracy case in seven districts other than the one where the drugs were being sold.[2] Prosecuting the case in one of those “just passing through” districts, one located close to a thousand miles away from where the drugs were sold, illustrates the concerns about the vitality of the vicinage right that Holmes identified. That right does not receive much attention these days, but was important enough to the Founders that it— rather than the right to confront witnesses, or the right against self-incrimination, or even the right to due process— along with the related right to trial by jury are the only rules of criminal procedure included in both the original Constitution and Bill of Rights. See generally United States v. Cobrales, 524 U.S. 1, 6, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (“Proper venue in criminal proceedings was a matter of concern to the Nation’s founders.”); Steven A. Engel, The Public’s Vicinage Right: A Constitutional Argument, 75 N.Y.U. L.Rev. 1658, 1680-91 (2000) (chronicling the history of the vicinage right). The “structural” Article III Venue Clause and the Sixth Amendment that is framed in terms of a defendant’s right serve both “the community’s interest in law enforcement as well as the defendant’s right to a fair trial.” Engel at 1681.
It undermines both of these concerns to try members of a large-scale Indianapolis drug ring, with life sentences on the line, in Sherman, Texas (population 39,943). The great leeway Hyde gives federal agents to shop cases to the United States Attorney’s Office with the lowest thresholds for prosecuting cases implicates the Founder’s “fear that in the absence of the vicinage right, the government might select the community that would be most prone to convict the defendant.”[3] Id. at 1695; see also id. at 1695 n. 195 (citing Patrick Henry’s concern at the Virginia Ratifying Convention that without adding a locality requirement to the Article III Venue Clause’s state requirement, the government might transport a defendant “from one extremity of the state to anoth *326 er”). And jurors from Indianapolis, not east Texas, should be deciding a case involving tens of millions of dollars in drug transactions in their community. See Taylor v. Louisiana, 419 U.S. 522, 530, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (“Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system.”); Akhil Reed Amar, The Bill of Rights 88-89 (1998) (explaining that the vicinage right sought to ensure that “the jury would be composed of citizens from the same community, and its actions were expected to be informed by community values”); cf. William J. Stuntz, The Collapse of American Criminal Justice 141-42 (2011) (identifying decreased local involvement in law enforcement, including less localized jury selection, as a failing of the modern criminal justice system).
Despite the prescience of Justice Holmes’s dissent, the Hyde rule is longstanding and there have been no indications it will be reconsidered. Judges’ decisions are not, however, the only source for expressing important principles of our criminal justice system. Prosecutorial discretion also plays a part as demonstrated by another area of law in which the courts have read a constitutional right narrowly. Although the Supreme Court has interpreted the Double Jeopardy Clause to allow different sovereigns to prosecute the same conduct,[4] the Department of Justice’s Petite Policy substantially constrains federal prosecutors’ ability to do so. See United States Attorney’s Manual § 9-2.031 (requiring approval from an Assistant Attorney General to pursue a federal prosecution after a prior state prosecution for the same conduct and listing various factors that should be considered in determining whether the presumption against such prosecutions has been overcome). Something similar would help ensure that conspiracy cases are being prosecuted in communities that have a meaningful connection to the case.

. Hyde would not have supported venue in this case because its reasoning that venue exists anywhere a conspirator acts was based on an overt act being an element of the general federal conspiracy statute it considered. Id. at 356-58, 32 S.Ct. 793. The drug conspiracy statute (21 U.S.C. § 846) does not require an overt act. See United States v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). But in the years following Hyde, the Supreme Court extended its venue holding to conspiracy statutes like the current drug one that do not require an overt act. See Whitfield v. United States, 543 U.S. 209, 218, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005) ("[T]his Court has long held that venue is proper in any district in which an overt act in furtherance of the conspiracy was committed, even where an overt act is not a required element of the conspiracy offense.” (citing United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Trenton Potteries Co., 273 U.S. 392, 402-04, 47 S.Ct. 377, 71 L.Ed. 700 (1927))).

. Assuming the most direct route using interstate highways, venue was created in the following in order of the route: the Central and Southern Districts of Illinois; the Eastern District of Missouri; the Eastern and Western Districts of Arkansas; and the Eastern and Northern Districts of Texas.

. Given the countless crimes that could be charged at the federal level, U.S. Attorney's Offices typically have thresholds that guide their determination of whether there is a sufficient federal interest to warrant federal prosecution. The thresholds might involve drug quantity for drug cases, loss amount for fraud cases, number of images in child pornography cases, etc. The thresholds can vary significantly among different districts.

. As is the case for many rules of criminal procedure, Prohibition gave rise to one of the early cases announcing the "dual sovereign” doctrine that allows both federal and state prosecutions for the same conduct. See United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922) (allowing a federal prosecution for the sale of liquor after a conviction for the same in Washington state). That same year, the doctrine also allowed Massachusetts authorities to try the original Ponzi schemer after the feds had already obtained a conviction. See Ponzi v. Fessenden, 258 U.S. 254, 261, 42 S.Ct. 309, 66 L.Ed. 607 (1922). The doctrine is much criticized. See Bartkus v. Illinois, 359 U.S. 121, 150, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (Black, L, dissenting); David Bryan Owsley, Note, Accepting the Dual Sovereignty Exception to Double Jeopardy: A Hard Case Study, 81 Wash. U. L.Q. 765, 767 n. 8 (2003) (listing numerous examples of the "almost uniform! 1” criticism from academics).