**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

AYANDE YEARWOOD,
            *Defendant-Appellant.*

No. 06-5128

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:05-cr-00105-RDB)

Argued: December 7, 2007

Decided: March 6, 2008

Before WILKINSON and SHEDD, Circuit Judges, and
John Preston BAILEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Shedd and Judge Bailey joined.

---

## COUNSEL

**ARGUED:** Matthew McGavock Robinson, ROBINSON &
BRANDT, P.S.C., Cincinnati, Ohio, for Appellant. Charles Joseph
Peters, Sr., Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.
**ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore,
Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

Ayande Yearwood appeals his conviction for conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (2000). Yearwood was initially charged with this conspiracy offense and a second count of distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (2000). A jury acquitted Yearwood on the distribution count and hung on the conspiracy offense, resulting in a mistrial on the conspiracy charge. In a second trial, Yearwood was found guilty of conspiracy.

Yearwood claims on appeal that the Double Jeopardy Clause of the Fifth Amendment barred his retrial for conspiracy, because the retrial required relitigation of "an issue of ultimate fact" already determined by the jury in his first trial for the substantive crime of distribution. A substantive crime and conspiracy to commit that crime are "separate offenses" for purposes of the Double Jeopardy Clause, however, because an agreement to do an act is distinct from the act itself. *United States v. Felix*, 503 U.S. 378, 390 (1992). Largely because the two offenses are distinct, Yearwood's second trial did not require relitigation of "an issue of ultimate fact" that had already been determined in the first trial. *See, e.g.*, *Schiro v. Farley*, 510 U.S. 222, 232 (1994). Because there was substantial evidence from which a rational jury could find Yearwood guilty of conspiracy, we affirm Yearwood's conviction.

I.

The indictment charges that on or about July 25, 2002, Ayande Yearwood knowingly conspired to distribute and possess with intent to distribute 50 grams or more of cocaine base. The conspiracy was an outgrowth of the relationship between Yearwood and two other individuals, Maurice Malone and Kevon Isaac. Yearwood had a long-standing social and business relationship with both men. Indeed, both Malone and Isaac testified that they had known Yearwood since the early 1990s. In 1992, Malone and Yearwood were charged and convicted together for possession with intent to distribute cocaine and

conspiracy to distribute cocaine. Isaac also testified that between 1999 and 2001, he had purchased cocaine base from Yearwood on approximately twenty occasions.

In January 2002, Isaac was arrested by the FBI and charged with distribution of cocaine base. He pled guilty to the charge, and in the hopes of receiving a reduced sentence, he agreed to cooperate with the FBI as an informant. Isaac testified that after his arrest, he was unable to obtain drugs from Yearwood because Yearwood was afraid that Isaac might be working with law enforcement. Since Isaac could not contact Yearwood directly about obtaining drugs, the FBI instructed Isaac to contact "lower level drug traffickers," such as Malone, who could get in touch with Yearwood. Malone was neither working with the FBI nor aware that Isaac was cooperating with it.

At the FBI's direction, Isaac called Malone numerous times in July 2002 about arranging the purchase of a large amount of cocaine base from Yearwood. According to both Isaac's and Malone's testimony, during one particular call on July 22, Isaac asked Malone whether he had spoken to "Meloton" or "Militan" (nicknames of Yearwood's) about the "food" (a code word for cocaine base). Malone said that he had spoken with Yearwood, and that Yearwood had said he wanted "49" ($4900.00) for "seven" (seven ounces of cocaine base).

Also during July 2002, the FBI installed a dialed number recorder ("DNR") on the landline telephone at Malone's apartment which allowed the FBI to see the numbers of incoming and outgoing calls to Malone's landline, as well as the dates and times of those calls. DNR records indicated that between July 9 and July 31, 2002, numerous calls were made to and from Malone's telephone and a cell phone listed under a third party name but which, according to the government, actually belonged to Yearwood. Many of these calls occurred on July 20, 21, 22, 23, and 25. One recorded call, made on July 23, was a three-way call involving Yearwood, Malone, and Isaac. The call began with just Isaac and Malone, but after Malone told Isaac that he had not yet gotten the "food" from Yearwood, Isaac asked Malone to connect Yearwood on a three-way call. After Yearwood was connected, Isaac began speaking with him. Yearwood immediately recognized Isaac's voice. Isaac asked Yearwood whether he had a "CD

player" or any "CDs" (also code words for cocaine base); Yearwood said that he did not and immediately hung up.

Malone testified that shortly after the three-way call ended, Yearwood called to complain about Isaac being put on the three-way call, and to tell Malone that he did not want Isaac to know he was Malone's supplier. That same day, July 23, 2002, Malone and Isaac continued to discuss Malone's plan to obtain seven ounces of cocaine base from Yearwood. Because Yearwood did not want to deal with Isaac, the two agreed not to tell Yearwood that the cocaine was for Isaac. Malone also told Isaac that Yearwood would want all the money up front.

Based on these various conversations, the FBI instructed Isaac to complete the cocaine purchase on July 25, 2002. On that day, FBI agents set up surveillance at both Malone's and Yearwood's apartments at 4:00 p.m. At around 6:10 p.m., Detective Glen Hester video-taped Yearwood walking into Malone's apartment. Malone testified that Yearwood was carrying cocaine base in the waist area of his pants. Yearwood was videotaped leaving Malone's apartment about three minutes later.

After Yearwood left, Malone called Isaac and told him to "come now." Isaac was then videotaped going into Malone's apartment. While Isaac was in Malone's apartment, their conversation was recorded by a body recorder Isaac was wearing. During that conversation, Malone said that Yearwood had only brought five ounces of cocaine base, and the two agreed that Isaac would pay $3500 for it. After paying for the cocaine base, Isaac left Malone's apartment to meet with FBI agents and to turn over the drugs and the remaining money. After analyzing the drugs, the FBI determined them to be cocaine base.

Malone testified that he had arranged to give the money from the drug sale to Yearwood at a later time. Between approximately 7:00 and 8:00 p.m., surveillance officers observed Yearwood's car parked at an auto repair shop about five miles from Malone's Apartment. Around 8:15 p.m., the FBI saw Malone leave his apartment on foot. To avoid jeopardizing the ongoing investigation and to protect Isaac's

identity as an informant, surveillance discontinued at that point, and no arrests were made that day.

In July 2004, Malone was arrested for distribution of cocaine base. Malone pled guilty and agreed to testify for the government against other drug dealers in hopes of obtaining a reduced sentence. In March 2005, likely based on evidence gathered against Yearwood by the FBI and Malone's statements that Yearwood was one of his sources for the cocaine base he had sold in 2002, a federal grand jury returned a two-count indictment against Yearwood. Yearwood was subsequently arrested in April 2005.

Count One of the indictment charged Yearwood with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged Yearwood with distribution as a principal or as an aider and abettor of 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

In the first trial, a jury found Yearwood not guilty on the distribution charge, and the court entered a judgment of acquittal as to that count on December 5, 2005. However, the jury was unable to reach a verdict as to the conspiracy charge, and the court declared a mistrial as to that count. On April 28, 2006, after retrial on the conspiracy charge, a second jury found Yearwood guilty of conspiracy. On May 5, 2006, Yearwood filed a Motion for Judgment of Acquittal, which was denied on May 17, 2006.

Yearwood timely appealed.

## II.

Yearwood first challenges the sufficiency of the evidence to support his conspiracy conviction. In order to prove conspiracy to distribute and possess cocaine base with intent to distribute, the government was required to establish beyond a reasonable doubt that: "(1) an agreement" to distribute and "possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became

a part of this conspiracy." *United States v. Burgos*, 94 F.3d 849, 857 (en banc) (4th Cir. 1996). The gravamen of the crime "is an *agreement* to effectuate a criminal act." *United States v. Laughman*, 618 F.2d 1067, 1074 (4th Cir. 1980).

Because a conspiracy is by nature "clandestine and covert," there rarely is direct evidence of such an agreement. *Burgos*, 94 F.3d at 857. As such, a conspiracy is usually proven by circumstantial evidence. *See, e.g.*, *Ianelli v. United States*, 420 U.S. 770, 777 n.10 (1975); *Burgos*, 94 F.3d at 857. "Circumstantial evidence tending to prove a conspiracy may consist of a defendant's 'relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" *Burgos*, 94 F.3d at 858 (quoting *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984)). Thus, a conspiracy "may be inferred from a development and collocation of circumstances." *Burgos*, 94 F.3d at 858 (quotation omitted).

Addressing Yearwood's objections to the government's case, there was plainly sufficient evidence to prove that Yearwood entered into an agreement with Malone and Isaac to distribute cocaine base. Malone's testimony is ample evidence that Yearwood and Malone were partners in this common enterprise. And while this court has held that even the uncorroborated testimony of a co-conspirator may be sufficient to support a guilty verdict for conspiracy, *see United States v. Baker*, 985 F.2d 1248, 1255 (4th Cir. 1993), Malone's testimony is corroborated by Isaac's testimony, the videotape of Yearwood visiting Malone at his apartment, the recorded telephone calls among Isaac, Malone, and Yearwood, and DNR records showing a large number of phone calls logged between Yearwood's cell and Malone's landline. *See id.* at 1255 (a large number of telephone calls between two alleged co-conspirators "supports the view that the two were partners").

Yearwood, however, contends that this evidence at most establishes that he and Malone had a buyer-seller relationship, and that such a relationship "does not provide the grounds for finding a conspiracy." *See United States v. Mills*, 995 F.2d 480, 485 (4th Cir. 1993). However, "evidence of a buy-sell transaction is at least relevant (i.e. probative) on the issue of whether a conspiratorial relation-

ship exists." *Id.* at 485 n.1. Further, evidence of such a relationship, when combined with evidence of a substantial quantity of drugs — as here — "would support a reasonable inference that the parties were coconspirators." *Id.* Moreover, the amount of cocaine base and money that Malone testified he had discussed with Yearwood (seven ounces for $4900), and the amount of cocaine base and money involved in the July 25 transaction (five ounces for $3500) far exceeded the amounts involved in a simple buyer-seller transaction, and supports an inference that Malone and Yearwood were distributing drugs together.

Further, Yearwood's suggestion that he was only in the business of distributing Caribbean music CDs is without merit. Isaac and Malone each testified that they had purchased cocaine base, not music, from Yearwood many times before. Moreover, FBI Special Agent Sapilway testified that it is common for drug traffickers to use words like "food" and "CDs" to mean drugs. Both Isaac and Malone testified that "food," "CDs," and "CD Player" were code for cocaine base. This was more than enough to support a rational jury finding that Yearwood was deep into the drug trade, and that when Yearwood offered Malone "seven" for "49" over the telephone, he was referring to cocaine base and dollar amounts, not to actual "food" or "CDs."

Because a rational jury certainly could have found beyond a reasonable doubt that Yearwood knowingly engaged in a conspiracy to distribute and possess cocaine base with intent to distribute, we conclude that Yearwood's conviction is supported by substantial evidence.

## III.

Yearwood contends that his retrial on the conspiracy count violated his rights under the Double Jeopardy Clause of the Fifth Amendment because he had earlier been acquitted of the substantive crime of distribution of cocaine base. Double jeopardy bars a second prosecution for the same offense after acquittal or after conviction. *See, e.g.*, *Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994). Moreover, the collateral estoppel component of double jeopardy bars the "relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses." *United States v. Ruhbayan*, 325

F.3d 197, 201 (4th Cir. 2003) (quotation omitted). We conclude that double jeopardy poses no bar to Yearwood's conviction.

A.

We must first determine whether the two offenses at issue here — the substantive offense of distribution of cocaine base and conspiracy to commit that offense — are the "same offense" such that retrial on the conspiracy count was barred by the Double Jeopardy Clause. The Supreme Court has long held that two offenses are the "same" for Double Jeopardy purposes if they cannot survive the "same-elements" test. *See, e.g.*, *United States v. Dixon*, 509 U.S. 688, 696 (1993). The "same-elements" test asks "whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.*

The two offenses here are not the same. A substantive crime and conspiracy to commit that crime are "separate offenses" for purposes of the Double Jeopardy Clause, even if they are based on the same underlying incidents. *Felix*, 503 U.S. at 389-90; *see also United States v. Banks*, 10 F.3d 1044, 1050 (4th Cir. 1993). Indeed, "conspiracy is a distinct offense from the completed object of the conspiracy." *Garrett v. United States*, 471 U.S. 773, 778 (1985). This is because "the agreement to do the act is distinct from the act itself." *United States v. Bayer*, 331 U.S. 532, 542 (1947).

To prove distribution of cocaine base, the government had to show that Yearwood, as a principal, (1) knowingly or intentionally (2) distributed (3) 50 grams of cocaine base, or that, as an aider and abettor, he "knowingly associated himself with and participated in the criminal venture," here, distribution of cocaine base. 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2; *Burgos*, 94 F.3d at 873. In contrast, to prove conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, the government had to establish that "(1) an agreement" to distribute and "possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *Burgos*, 94 F.3d at 857.

Yearwood suggests that an overlap exists between the "knowingly associated himself with and participated in the criminal venture" element of aiding and abetting the substantive offense and the "knowingly and voluntarily became a part of th[e] conspiracy" element of conspiracy. But the two are separate: the former involves participation in the criminal act itself; the latter involves participation in an *agreement* to perform that act. *See United States v. Shabani*, 513 U.S. 10, 16 (1994) ("[T]he criminal agreement itself is the *actus reus* . . . ."). *Felix* makes clear that Yearwood's retrial for conspiracy violates no double jeopardy bar. 503 U.S. at 391.

### B.

Although the conspiracy retrial did not run afoul of the "same-elements" test, Yearwood contends that the collateral estoppel component of the Double Jeopardy Clause barred retrial on the conspiracy count because it "required relitigation of factual issues already resolved at the first trial." *See Dowling v. United States*, 493 U.S. 342, 347 (1990).

Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The Fourth Circuit has not spoken precedentially on the precise issue of whether a retrial on a conspiracy count after an acquittal on the underlying substantive count runs afoul of the doctrine of collateral estoppel. However, we find two decisions of our sister circuits instructive. Both the Fifth and the Eleventh Circuits have addressed whether the collateral estoppel doctrine applies to subsequent conspiracy prosecutions after an acquittal on the substantive crime of possession with intent to distribute. Both courts concluded that collateral estoppel prohibited neither the subsequent trial on the conspiracy charge nor the admission of evidence related both to the acquitted charge and to the charge of conspiracy. *See United States v. Gil*, 142 F.3d 1398, 1401-02 (11th Cir. 1998); *United States v. Brackett*, 113 F.3d 1396, 1400-1402 (5th Cir. 1997).

In *Brackett*, the Fifth Circuit reversed the district court's decision to suppress, at a trial for conspiracy, evidence related to a possession

with intent to distribute offense for which the defendant was previously acquitted, on the grounds that "[a] general verdict of acquittal merely indicates that the government has failed to convince the jury, beyond a reasonable doubt, of at least one essential element of the substantive offense; it does not 'necessarily determine' any facts at issue in the conspiracy trial." 113 F.3d at 1400. And in *Gil*, the Eleventh Circuit also reversed the district court's decision to suppress, in a retrial for conspiracy, evidence related to the acquitted possession with intent to distribute offense. The court noted that even if certain facts are "necessarily determined" in the prior trial, if those facts do not constitute "an essential element of the mistried count," that is, they "do not constitute an ultimate issue regarding the mistried count," then the government "not only may retry the mistried count but also may introduce evidence relating to the acquitted count that is relevant to the mistried count and otherwise satisfies the Federal Rules of Evidence." 142 F.3d at 1401 (citing *Dowling*, 493 U.S. at 348-49 (permitting evidence related to a previously acquitted charge when that evidence is admissible for a purpose that does not require proof beyond a reasonable doubt)).

Guided by these principles, we turn to Yearwood's argument that certain facts were "necessarily determined" in the first trial, and that those facts constituted "ultimate issues" as to the mistried conspiracy count. Specifically, Yearwood argues that because the jury in the first trial determined that he did not commit, as a principal or as an aider and abettor, the crime of distribution of cocaine base, the jury necessarily determined that Yearwood did not supply cocaine base to Malone on July 25, 2002. According to Yearwood, the only evidence of Yearwood's participation in the conspiracy was evidence that he had supplied the drugs to Malone. Therefore, not only was the government collaterally estopped, under the Double Jeopardy Clause, from introducing evidence that Yearwood supplied drugs to Malone, but also the government was barred from retrying him on the conspiracy count, since it required relitigation of an "essential" or "ultimate" fact already resolved in Yearwood's favor by the first jury.

Yearwood, however, cannot meet his burden of establishing that the first jury "necessarily determined" a factual issue "essential" to proving an element of the conspiracy count. *See Schiro*, 510 U.S. at 232; *Gil*, 142 F.3d at 1401. To begin, discerning precisely what facts

were "necessarily determined" in a general jury verdict is no easy task, and as such, "[c]ourts have always resisted inquiring into a jury's thought processes." *United States v. Powell*, 469 U.S. 57, 67 (1984). Moreover, we need not attempt to divine the precise thoughts of the first jury. Even if, as Yearwood contends, the first jury "necessarily determined" that Yearwood did not actually supply cocaine base to Malone on July 25, 2002, given that a substantive and conspiracy offense involve separate elements, it is quite unlikely that a factual finding with respect to any particular act is "essential" to proving the elements of conspiracy.

This makes perfect sense. The Supreme Court has repeatedly emphasized that, unless Congress expressly requires otherwise, a finding of conspiracy does not hinge on the commission of any one overt act, nor does it require commission of the object offense. *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 211, 218 (2005); *Shabani*, 513 U.S. at 11; *see also* 21 U.S.C. § 846. Indeed, a conspiratorial agreement is likely to be broader than one particular act. The government presented substantial evidence to this effect — including Malone's testimony that he had agreed with Yearwood to obtain drugs from Yearwood for distribution to others, and that he would help Yearwood with his drug sales by negotiating with customers, arranging the times and places for drug sales, and insulating Yearwood from customers; Malone's testimony, corroborated by Isaac's testimony, that Yearwood offered to sell the sizeable quantity of seven ounces of cocaine for $4900; and FBI Agent Sapilway's testimony, corroborated by Malone's and Isaac's testimony, that the words "CD" and "food" were code in the drug trade for cocaine base. This evidence bears out the Supreme Court's observation that the crime of conspiracy involves a knowing agreement to conspire and cannot be tied to any one act. While Yearwood claims the "offense conduct" for both the substantive and conspiracy offenses was the July 25 sale, a conspiracy most often signals a much broader enterprise than a single distributional event, and so it was here.

Because the issue of whether Yearwood actually supplied cocaine base to Malone on July 25, 2005 was not an "ultimate issue" as to the conspiracy count, the government was not barred from introducing

evidence that was probative of the elements of conspiracy or from retrying the conspiracy count.*

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

*Yearwood also argues that the district court abused its discretion by admitting into evidence Yearwood's 1992 conviction for possession with intent to distribute cocaine and conspiracy to distribute cocaine. However, the contested piece of evidence was admitted not to prove Yearwood's criminal disposition, but rather to prove Yearwood's knowledge and intent. *See* Fed. R. Evid. 404(b). The defendant's knowledge and intent are elements the government must establish to prove a conspiracy to violate 21 U.S.C. § 841(a)(1). *See United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991). Yearwood put the question of his knowledge and intent at issue at trial by arguing, among other things, that he was in the legitimate business of selling CDs of Caribbean music, suggesting that he did not have any intention of engaging in a conspiracy to distribute cocaine base. Finally, the district court did not abuse its discretion under Federal Rule of Evidence 403 in admitting the evidence.