**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4171

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROGER H. VIAR, SR.,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Lynchburg. Norman K. Moon, District Judge. (6:03-cr-30073-nkm-13)

Argued: January 30, 2008                     Decided: May 5, 2008

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Rhonda Lee Overstreet, LUMSDEN & OVERSTREET, Roanoke, Virginia, for Appellant. William Frederick Gould, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Roger H. Viar, Sr. appeals from his convictions and sentence for a methamphetamine conspiracy, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute methamphetamine, in contravention of 21 U.S.C. § 841(a)(1) (Count Two). At the conclusion of a trial conducted in the Western District of Virginia in April 2005, a jury convicted Viar of both offenses and made a forfeiture award to the Government. Viar sought post-trial relief, contending that the evidence was insufficient to justify the verdict and the forfeiture award. The district court denied relief, ruling that Viar's convictions were adequately supported by the evidence, and also that the forfeiture award was warranted. See United States v. Viar, No. 6:03-cr-30073 (W.D. Va. May 12, 2005) (the "Opinion").[1] In January 2006, Viar was sentenced to 188 months of imprisonment. On appeal, Viar contends that his convictions should be vacated because there was insufficient evidence to support them, and that his sentence is defective for multiple reasons. As explained below, we reject Viar's appellate contentions of error and affirm his convictions and sentence.

---

[1] The Opinion can be found at J.A. 475-81. (Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.)

2

I.

A.

On September 5, 2003, the initial indictment in this case (the "First Indictment") was returned by a grand jury in the Western District of Virginia, charging eight defendants — but not Viar — with, inter alia, a drug conspiracy to distribute 500 grams or more of methamphetamine.[2]  Later in September 2003, the apparent ring-leader of the conspiracy, James Davis, was arrested and began cooperating with the authorities.  He immediately provided them with information about Viar.  On March 1, 2004, he pleaded guilty to the conspiracy offense alleged in Count One of the First Indictment.  Pursuant to his plea agreement with the Government, Davis continued to cooperate, seeking a "substantial assistance" reduction in his sentence.[3]

On April 26, 2004, Viar was apprehended by the Virginia State Police while driving his Ford pick-up truck on a public highway in Campbell County, Virginia.[4]  The officers were responding to

---

[2]  In discussing the controlled substance methamphetamine, we mean a substance or mixture containing methamphetamine.

[3]  Four of Davis's codefendants in the First Indictment, Clayton Keyes, William Keyes, Joseph Keyes, and Denise Hamilton, also pleaded guilty to the Count One conspiracy offense on March 1, 2004.  A sixth defendant, Donald Owens, pleaded guilty to Count One on July 1, 2004.

[4]  We recite the facts in the light most favorable to the Government as the prevailing party at trial.  See United States v. Kelly, 510 F.3d 433, 435 (4th Cir. 2007).

3

information secured in the drug investigation, including a tip from Viar's wife, who had found illicit drugs in his truck. The officers searched Viar's vehicle and seized a plastic bag containing 25.3 grams of methamphetamine from the glove box, as well as over $26,000 in cash from a bag in the rear passenger compartment. They also searched Viar's person, finding $6187 in cash, and a check made out to him for $857.31.

On July 7, 2004, the grand jury returned a superseding indictment in this case (the "Superseding Indictment"), charging Viar and seven additional codefendants, including two named in Count One of the First Indictment who had not yet pleaded guilty (Frank Padgett and Me'Chelle Baldwin), plus several drug suppliers from California. The eight defendants named in the Superseding Indictment were charged in the Count One conspiracy, as well as the forfeiture allegation. Viar was separately charged in Count Two with possession of methamphetamine with intent to distribute, arising from the events of April 26, 2004.

The Count One conspiracy alleged in the Superseding Indictment is materially and substantially the same as the Count One conspiracy alleged in the First Indictment — the only distinctions relate to the conspirators named and the date the conspiracy

4

commenced.[5]  The Superseding Indictment alleged, in pertinent part, that

> beginning sometime in or about 1996, and continuing through the return date of this Superseding Indictment, in the Western District of Virginia and elsewhere, the defendants, FRANK P. PADGETT, III, MICHELLE [ME'CHELLE] M. BALDWIN, aka "Maude," DAVID M. BINGHAM, CURTIS L. MORTON, Sr., ROCK A. ROSSER, aka "Rocky," ROGER L. WOODCOCK, ROGER H. VIAR, Sr., and DAVID M. COLINGER, aka "Big O," did knowingly and intentionally . . . conspire, . . . and agree together, and with diverse other persons known and unknown to the Grand Jury, to knowingly and intentionally distribute and possess with intent to distribute five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine.

J.A. 13-14.  In both indictments, the Count One conspiracy allegedly occurred "in the Western District of Virginia and elsewhere," and involved, in addition to those named as defendant conspirators, "diverse other persons known and unknown to the Grand Jury."  Id.

After the Superseding Indictment was returned, an arrest warrant was issued for Viar, and, on July 14, 2004, officers proceeded to his home and placed him under arrest.  Upon searching Viar, the officers found a plastic bag containing a quarter to a half ounce of methamphetamine, plus $2719 in cash.  After obtaining consent from Viar's wife to search the residence and the vehicles on the Viar property, the officers seized two bundles of cash from the trunk of a Cadillac parked in front of the home — one valued

---

[5]  The First Indictment alleges that the conspiracy began in 1998, while the Superseding Indictment alleges it began in 1996.

at $7700, and the other at $24,120.  They also seized three tractor-trailer trucks belonging to Viar.

Defendants Padgett and Baldwin (named as conspirators in Count One of both indictments) thereafter pleaded guilty to the Count One conspiracy.  Coconspirators Bingham, Morton, Woodcock, and Colinger — each named for the first time in the Superseding Indictment — also pleaded guilty to the Count One conspiracy.  The two remaining named conspirators in the case, Viar and Rosser, put the prosecution to its proof and proceeded to trial.

## B.

### 1.

Viar and Rosser's jury trial began on April 5, 2005, in Lynchburg.  During the three-day trial, the prosecution presented several witnesses, seeking to prove that Viar and Rosser had been involved in the methamphetamine distribution conspiracy alleged in Count One.[6]  Woodcock, one of the convicted conspirators, testified that Rosser regularly moved multiple kilograms of methamphetamine from California to Virginia, where he sold quantities of the substance to Woodcock and convicted conspirator Davis (who then distributed the methamphetamine in the Lynchburg area).  Davis was a key prosecution witness, and testified that, after a falling out

---

[6]  Rosser pleaded guilty to Count One on April 6, 2005, the second day of trial, and was thereafter not involved in the proceedings.

6

with Woodcock, he obtained methamphetamine from other California sources, including convicted conspirator Bingham.

In 2003, Davis first met Viar and began obtaining quantities of methamphetamine from him, while continuing to be supplied by Bingham and others. Davis had several regular customers, including convicted conspirator Baldwin, who would occasionally pick up packages of methamphetamine for Davis. Davis maintained an organization of several conspirators who purchased packages of methamphetamine, then repackaged and sold the substance in smaller quantities. Davis obtained ten to twelve ounces (280 to 336 grams) of methamphetamine from Viar over the course of a few months in 2003. On one occasion, Jeremy Carroll, another prosecution witness, saw Viar hand Davis a white package while Viar was sitting in his pick-up truck. The package contained approximately two ounces of methamphetamine, and Davis immediately sold part of it to Joseph Keyes (a conspirator charged in the First Indictment). Davis admitted being personally responsible for buying and selling at least fifteen kilograms of methamphetamine.

The prosecution also called Jeffrey Roatenberry, a driver in Viar's logging business, who had obtained "eight-ball quantities" (approximately 3.5 grams) of methamphetamine from Viar at least once a week over a nine-month period in 2002 and 2003, for a total of about 126 grams. Viar later sold Roatenberry "ounce" quantities of methamphetamine, at least weekly, for a period of one-and-a-half

7

to two years, conservatively estimated at a total of 2016 grams. Roatenberry personally used some of these drugs and sold the balance to others. One of Viar's drug sources was Eddie Evans, who Roatenberry introduced to Viar (Roatenberry and Evans were never charged in the Count One conspiracy). On one occasion, Roatenberry obtained three ounces of methamphetamine from Evans and delivered it to Viar. Roatenberry also assisted Viar in dividing large quantities of methamphetamine into smaller quantities for resale purposes. Viar contacted Evans at least once every other week, and Viar told Roatenberry that he purchased methamphetamine from sources other than Evans. Viar once asked Roatenberry to hold $60,000 in cash for him and, on another occasion, told Roatenberry about $100,000 in cash hidden in the trunk of his wife's car.

James Mitchell and John Henry Preas — who were not charged in the Count One conspiracy — also testified for the prosecution, and admitted obtaining "half-ounce to ounce" quantities of methamphetamine from Viar. Viar asked Mitchell to deliver methamphetamine to Preas because it was easier for Preas to deal with Mitchell. During this activity, Mitchell received approximately eight ounces (224 grams) of methamphetamine from Viar, and he used the substance to supply Preas and others. Mitchell paid Viar $1200 an ounce up front but, when he lacked sufficient funds, paid Viar after selling the methamphetamine. Mitchell was involved in this arrangement with Viar for five or six

months in 2002 and 2003.  According to Preas, Viar was a user as well as a distributor of methamphetamine.

Viar's wife, Ruby, presented some exculpatory evidence on behalf of her husband.  She explained that Viar had won $18,000 in Atlantic City the weekend before he was arrested in April 2004.  She also said that Viar routinely kept a few thousand dollars with him for his logging business.  Viar called three witnesses and did not testify on his own behalf.

## 2.

Viar made two motions for judgment of acquittal during the trial — at the close of the prosecution's case-in-chief and again at the close of all the evidence — both of which were denied.[7]  On

---

[7]  In connection with Viar's argument that the evidence failed to show that he was involved in the <u>overall</u> conspiracy alleged in Count One, the court instructed the jury on single conspiracy-separate conspiracy principles, and on the question of whether Count One failed to allege the conspiracy established by the evidence.  That instruction was, inter alia, in the following terms:

> In order to sustain its burden of proof on [Count One], the government must show that the single conspiracy alleged in Count One of the indictment existed. Proof of separate or independent conspiracies is not sufficient. . . .  Even if the evidence in the case shows that a defendant was a member of some conspiracy, but that this conspiracy is not the single conspiracy charged in the indictment, then you must acquit the defendant of this charge.

Jury Instructions at 6-7, <u>United States v. Viar</u>, No. 6:03-cr-30073 (W.D. Va. May 12, 2005).

April 7, 2005, on completion of the initial phase of trial, the jury returned a guilty verdict against Viar on the Count One conspiracy and the Count Two substantive offense. On completing the forfeiture phase, the jury returned its Special Verdict, consisting of a $500,000 money judgment, plus the forfeiture of $40,000 in cash and three large trucks. On April 13, 2005, Viar again moved for judgment of acquittal, arguing that his conviction on the Count One conspiracy was defective in two respects: (1) the prosecution's evidence was insufficient to show that he had conspired to distribute 500 grams or more of methamphetamine, and (2) even if shown to be a conspirator, the prosecution had failed to prove that he was involved in the overall conspiracy alleged in Count One. Viar also contended that his conviction on the Count Two substantive offense, as well as the forfeiture verdict, lacked sufficient supporting evidence.

By its Opinion of May 12, 2005, the district court denied Viar's request for post-trial relief. The court found sufficient evidence — including the testimony of Davis (as corroborated by Carroll) — to implicate Viar and establish his guilt on the Count One conspiracy. See Opinion 3-4.[8] As to Count Two, the court

_____

[8] In its Opinion, the district court explained its ruling on Viar's evidence contention on Count One, in part, as follows:

> Six government witnesses testified as to Viar's distribution of methamphetamine and his involvement in the conspiracy. This testimony established that

10

concluded that the methamphetamine seized from Viar on April 26, 2004, combined with the amount of cash he then possessed, permitted the jury to infer his intent to distribute drugs.  See id. at 4. Finally, the court ruled that there was substantial evidence to support the forfeiture award.  See id. at 4-6.

C.

A presentence report ("PSR") was then prepared, attributing 11.8 kilograms of methamphetamine to Viar.  The PSR reached this amount by converting the $500,000 forfeiture money judgment to a drug quantity, at the rate of $1200 per ounce of methamphetamine. Viar objected to the drug quantity recommended by the PSR, asserting that the testimony of Roatenberry, Davis, and Mitchell was inconsistent and unreliable, and arguing that no more than 538 grams of methamphetamine should be attributed to him.[9]  Viar also

_____

Defendant was distributing methamphetamine to multiple buyers.  The government also presented evidence linking James Davis and his suppliers in California to Virginia residents, including Defendant Roger Viar.  This evidence included Davis's testimony that he had purchased methamphetamine from Defendant on multiple occasions. Davis's testimony was corroborated by the testimony of Jeremy Carroll.  Davis's testimony provided the necessary link connecting Defendant to the overall conspiracy.

Opinion 3.

[9]  During plea negotiations, Viar had offered to admit to 538 grams of methamphetamine, but the Government would agree to his guilty plea on the Count One conspiracy only if he admitted to 15 kilograms.

objected to the PSR's recommendation that he be denied an adjustment for acceptance of responsibility. The PSR concluded that, although Viar conceded during plea negotiations that he purchased significant amounts of methamphetamine, he admitted selling only small quantities to Baldwin, Mitchell, and Preas. According to the PSR, because Roatenberry, Mitchell, Preas, and Davis testified that they obtained larger quantities from Viar than he was willing to acknowledge, Viar had falsified the extent of his involvement in the Count One conspiracy.

The district court overruled Viar's objections and adopted the PSR's Sentencing Guidelines calculations, resulting in a total offense level of 36, a criminal history category of I, and an advisory sentencing range of 188 to 235 months. Viar then argued that he should be sentenced below the advisory range because he did not know several of the conspirators; he had a legitimate, thriving business; he had a drug problem; he had sold his logging business to pay the forfeiture judgment (saving the Government the time and expense of collection); he had paid the forfeiture judgment for the entire conspiracy; and due to his age (sixty-two years old). The court rejected Viar's contentions, however, and sentenced him to 188 months in prison. In so doing, the court observed that it had considered all the factors "it was supposed to consider," including the fact that Viar had not fully accepted responsibility. J.A.

12

516. Viar filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's denial of a motion for judgment of acquittal. See United States v. Ryan-Webster, 353 F.3d 353, 359 (4th Cir. 2003). We are obliged to sustain a guilty verdict that, viewing the evidence in the light most favorable to the prosecution, is supported by "'substantial evidence.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). We have defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id.

The Supreme Court has recognized that the "courts of appeals must review all sentences — [including those] inside . . . the Guidelines range — under a deferential abuse-of-discretion standard." Gall v. United States, 128 S. Ct. 586, 589-90 (2007); see also United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008). "[A]ppellate review of sentencing decisions is limited to determining whether they are reasonable." Gall, 128 S. Ct. at 590 (internal quotation marks omitted). If the sentence imposed by a

13

district court falls within the correctly calculated Guidelines range, we are entitled, on appellate review, to apply a presumption of reasonableness. See Rita v. United States, 127 S. Ct. 2456, 2462 (2007); United States v. Go, 517 F.3d 216, 218 (4th Cir. 2008).

## III.

With respect to his convictions, Viar challenges the sufficiency of the evidence to sustain the verdict on the Count One conspiracy offense as well as the Count Two substantive offense. We assess in turn whether Viar was entitled to judgment of acquittal on either of these charges.

## A.

Viar first contends on appeal — as he did in the district court — that there was insufficient evidence to convict him of Count One. More specifically, he contends that the court erred in denying his motion for judgment of acquittal on Count One because the prosecution's evidence "fail[ed] to prove that [he] was a member of the conspiracy involving the California suppliers and certain distributors in Virginia." Br. of Appellant 14. Viar asserts that the evidence established, at best, that he conspired with individuals in Virginia who were not connected to the conspiracy alleged in Count One.

14

In order to prove that Viar was a conspirator in Count One, in violation of § 846 of Title 21, the prosecution was obliged to prove — as the jury was instructed — (1) that there was an agreement between two or more persons to engage in conduct that violated a federal drug law; (2) that Viar had knowledge of the conspiracy; and (3) that he knowingly and voluntarily became part of the conspiracy. Under the applicable principles, a criminal conspiracy — a partnership in crime in which each member of the conspiracy becomes the agent of every other member — can be proven by either direct or circumstantial evidence, or both. See United States v. Brown, 856 F.2d 710, 711 (4th Cir. 1988). And, it is well-settled that "[o]nce a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." United States v. Strickland, 245 F.3d 368, 385 (4th Cir. 2001). In fact, it is settled that a conspirator need not have knowledge of all of his coconspirators, or the details of the conspiracy, and he may be convicted of conspiracy upon having played only a minor role. See id. (relying on United States v. Burgos, 94 F.3d 849, 861 (4th Cir. 1996) (en banc)).

Assessing the evidence in the light most favorable to the Government, it was sufficient for a reasonable factfinder to conclude that Viar was criminally liable for the conspiracy alleged. In 2003, Viar distributed approximately 280 to 336 grams

15

of methamphetamine to Davis, who pleaded guilty to the Count One conspiracy in the First Indictment. And, we have consistently held that a buyer-seller relationship, "when combined with evidence of a substantial quantity of drugs . . . '[supports] a reasonable inference that the parties were coconspirators.'" United States v. Yearwood, 518 F.3d 220, 226 (4th Cir. 2008) (quoting United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993)); see also United States v. Reid, No. 06-4826, 2008 WL 1734923, at *7 (4th Cir. April 16, 2008); Brown, 856 F.2d at 712 (recognizing that "[a] large quantity of [drugs] . . . supports an inference or presumption that appellant knew that he was a part of a venture which extend[ed] beyond his individual participation" (internal quotation marks omitted)). Thus, the quantity of drugs Davis purchased from Viar in 2003 sufficiently supports the inference that Viar and Davis conspired to distribute methamphetamine.

The trial evidence also showed that Davis was a ringleader of the Count One conspiracy in the Western District of Virginia. He purchased methamphetamine from several sources, including Woodcock, Bingham, and Viar. And, although Davis's drug sources changed from time to time, he had several regular customers, including conspirator Baldwin, who occasionally picked up packages of methamphetamine for Davis. Davis also maintained an organization of several conspirators who purchased packages of methamphetamine, then repackaged and sold the substance in smaller quantities. In

16

fact, Davis admitted involvement with over fifteen kilograms of methamphetamine.

As the district court recognized, Davis "provided the necessary link connecting [Viar] to the overall conspiracy." Opinion 3. Viar asserts, however, that even though he sold Davis several ounces of methamphetamine, he (Viar) had nothing to do with Davis's other drug sources, and that his conviction on Count One is thus undermined. Contrary to Viar's assertions, a conspirator, as noted above, need not have knowledge of all of his coconspirators, or the details of the conspiracy, and he may be convicted of conspiracy upon having played only a minor role. Strickland, 245 F.3d at 385.[10] Indeed, we have explained that

> it is not necessary to proof of a conspiracy that it have
> a discrete, identifiable organizational structure; the
> requisite agreement to act in concert need not result in
> any such formal structure, indeed frequently, in
> contemporary drug conspiracies, [it] contemplates and
> results in only a loosely-knit association of members
> linked only by their mutual interest in sustaining the
> overall enterprise of catering to the . . . consumption
> market.

United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993).

Viar and the other conspirators were plainly shown to have the same goal with respect to the same product in the same area —

---

[10] As the court instructed the jury, "the government need not prove that an alleged coconspirator know each of the other alleged members of the conspiracy. Nor need it establish that an alleged coconspirator was aware of each of the transactions alleged in the indictment." Jury Instructions at 7, United States v. Viar, No. 6:03-cr-30073 (W.D. Va. May 12, 2005).

17

distribution of methamphetamine in the Western District of Virginia. In resolving a single versus separate conspiracy issue, we have explained that a single conspiracy can exist if the evidence shows that the conspiracy proven, inter alia, "'had the same objective, . . . the same goal, the same nature, the same geographic spread, the same results, and the same product.'" United States v. Johnson, 54 F.3d 1150, 1154 (4th Cir. 1995) (quoting United States v. Crockett, 813 F.2d 1310, 1316-17 (4th Cir. 1987)). On this issue, the jury was carefully instructed that

> [i]n order to sustain its burden of proof on [Count One], the Government must show that the single conspiracy alleged in Count One of the indictment existed. Proof of separate or independent conspiracies is not sufficient. . . . Even if the evidence in the case shows that a defendant was a member of some conspiracy, but that this conspiracy is not the single conspiracy charged in the indictment, then you must acquit the defendant of this charge.

Jury Instructions at 6-7, United States v. Viar, No. 6:03-cr-30073 (W.D. Va. May 12, 2005). Significantly, no issue has been made or preserved on the propriety of this aspect of the instructions. And the jury, by its verdict, concluded beyond a reasonable doubt that Viar was guilty of the Count One conspiracy. In assessing the evidence, we are unable to disagree with the district court's conclusion that there was sufficient evidence to support the conspiracy verdict. We thus reject Viar's challenge to his Count One conviction.

18

B.

Viar also asserts that there was insufficient evidence to convict him of the Count Two offense of possession of methamphetamine with intent to distribute. In that regard, the Superseding Indictment alleged that "on or about April 26, 2004, in the Western Judicial District of Virginia, the defendant, ROGER H. VIAR, Sr., . . . did knowingly and intentionally possess with intent to distribute a mixture or substance containing [methamphetamine]." J.A. 15. In order to prove the Count Two offense, the prosecution was required to prove that Viar (1) possessed methamphetamine, (2) had knowledge of this possession, and (3) intended to distribute it. See Burgos, 94 F.3d at 873.

The evidence in support of Count Two was that, on April 26, 2004, Viar's pick-up truck was stopped by law officers and, at the time, he possessed slightly less than an ounce of methamphetamine, plus $6187 in cash and a check made out to him for $857.31. A search of his pick-up resulted in the seizure of over $26,000 in cash from a bag in a rear passenger compartment. Contrary to Viar's contentions, his intent to distribute methamphetamine could readily be inferred by the jury from these events. See United States v. Collins, 412 F.3d 515, 519 (4th Cir. 2005) (concluding that jury can infer intent to distribute from factors such as drug quantity, packaging, concealment, and cash seized); United States

19

v. Bell, 954 F.2d 232, 235 (4th Cir. 1992), overruled on other grounds by Burgos, 94 F.3d at 860; United States v. Fisher, 912 F.2d 728, 730 (4th Cir. 1990).

Viewed in the light most favorable to the Government, this evidence was sufficient for a reasonable jury to conclude that Viar possessed methamphetamine with the intent to distribute. Viar asserts, however, that he offered "uncontroverted evidence . . . to refute the government's circumstantial proof of the intent to distribute." Br. of Appellant 18.[11] Although Viar presented alternative explanations for the methamphetamine and cash seized from him, "[w]e may not weigh the evidence . . . . [That] function[] [is] reserved for the jury, and 'if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe.'" United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997) (quoting United States v. Singh, 54 F.3d 1182, 1186 (4th Cir. 1995)). In sum, because a reasonable factfinder could conclude that Viar possessed methamphetamine with the intent to distribute, we also affirm his conviction on Count Two.

---

[11] In support of this contention, Viar relies on the testimony of his wife, Ruby, plus Preas and Woodcock. Ruby Viar testified that her husband won $18,000 in Atlantic City the weekend before he was pulled over, and that he routinely carried a few thousand dollars with him for business purposes. Preas testified that Viar was a methamphetamine user, and Woodcock testified that a heavy user of methamphetamine could use two to two-and-one-half ounces in a month.

IV.

In challenging his sentence, Viar contends that the district court erred in adopting the drug calculation recommended by the PSR and in denying him an adjustment to his offense level based on his acceptance of responsibility. He also maintains that his sentence was unreasonable. We assess these contentions in turn.

A.

First, Viar contends that the district court erroneously calculated the drug quantity attributable to him for sentencing purposes. A trial court's determination of drug quantity is a factual finding that we review for clear error. See United States v. Randall, 171 F.3d 195, 210 (4th Cir. 1999). For sentencing purposes, the Government is required to prove drug quantity by a preponderance of the evidence. Id. As a general proposition, a conspirator is liable for "all reasonably foreseeable acts" of his coconspirators that were carried out in furtherance of the conspiracy. See USSG § 1B1.3(a)(1)(B) (2004).

Before returning its Special Verdict on the forfeiture issue, the jury was instructed to hold Viar responsible only for the amount that was reasonably foreseeable to him. The forfeiture verdict found the underlying conspiracy to involve $500,000 in gross proceeds, resulting from violations of 21 U.S.C. §§ 846 and 841(a)(1), and also found that drug quantity to be reasonably

21

foreseeable to Viar. Relying thereon, the PSR concluded that 11.8 kilograms of methamphetamine were attributable to Viar for sentencing purposes — premised on the conversion of the $500,000 forfeiture finding to a corresponding quantity of methamphetamine.[12]

We have recognized that a sentencing court is entitled to utilize the "drug equivalent" of drug-related cash in calculating drug quantity for sentencing purposes. See United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991). Although the quantity calculation made in the PSR was an estimate, "[a] district court's finding . . . is not erroneous if it is based on evidence possessing sufficient indicia of reliability to support its probable accuracy." United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir. 1992). In the absence of an affirmative showing that the facts related in the PSR are incorrect, the sentencing court is entitled to adopt its findings. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). As a result, the district court did not clearly err in attributing 11.8 kilograms of methamphetamine to Viar for sentencing purposes.[13]

---

[12] The PSR used $1200 as an estimated price for an ounce of methamphetamine because it was an average of the prices given by Viar and the various trial witnesses.

[13] Viar makes several assertions that appear to challenge the sufficiency of the evidence relating to the $500,000 special verdict on forfeiture, but couches them in his contentions regarding drug quantity. Because Viar does not specify that he is challenging the sufficiency of the evidence supporting the special verdict, we need not further address the propriety of the forfeiture award.

Next, Viar contends that the district court erred in failing to grant his request for an acceptance of responsibility adjustment. Viar asserts, in support of this proposition, that he had admitted his culpability prior to trial and only put the prosecution to its proof because of a disagreement with the prosecution on drug quantity. The court decided, however, that Viar was not entitled to such an adjustment, because he had not admitted the extent of the drug activity for which he was found culpable by the jury. We review a district court's decision to deny an adjustment for acceptance of responsibility for clear error. See United States v. Ruhe, 191 F.3d 376, 388 (4th Cir. 1999).

In order to receive an adjustment for acceptance of responsibility, a defendant must, pursuant to section 3E1.1 of the Guidelines, "prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." United States v. May, 359 F.3d 683, 693 (4th Cir. 2004) (citing United States v. Nale, 101 F.3d 1000, 1005 (4th Cir. 1996)). As a general proposition, an adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial." USSG § 3E1.1 cmt. n.2 (2004). Nevertheless, a

defendant is entitled to go to trial and yet, in certain circumstances, still receive such an adjustment. For example, an adjustment might be warranted if a defendant proceeded to trial "to assert and preserve issues that do not relate to factual guilt." Id. It is well-settled, however, that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id. § 3E1.1 cmt. n.1(a).

This record reveals that, although Viar acknowledged being a drug distributor and being personally involved with 538 grams of methamphetamine, he did not accept responsibility before trial for the quantity attributable to him. The evidence established, as the district court recognized, that Viar was personally involved in well over 538 grams of methamphetamine. Thus, Viar did not accept responsibility for the conduct the jury attributed to him, and continued to deny the extent of his involvement. As a result, the district court did not err in finding that Viar had failed to accept responsibility for his criminal conduct and in denying him the adjustment sought.

## C.

Finally, Viar argues that his sentence was unreasonable because it did not account for the fact that: (1) he had a successful business that employed several individuals and supported

his family; (2) he had sold his business to pay the forfeiture judgment; (3) he was elderly; and (4) he was a heavy drug user. Viar was sentenced to 188 months, at the bottom of his advisory Guidelines range. Although Viar argues that a variance sentence below the Guidelines range would adequately have taken these facts into account, the sentence imposed was nevertheless reasonable.[14] Viar's advisory Guidelines range was correctly calculated, the court considered the relevant sentencing factors, and it chose to sentence Viar at the low end of his advisory range. There is no abuse of discretion apparent in this regard, and we are thus obliged to affirm Viar's sentence.

V.

Pursuant to the foregoing, we reject Viar's appellate contentions and affirm his convictions and sentence.

AFFIRMED

---

[14] Although Viar asserts that the court erred in failing to grant a "downward departure from the advisory guidelines," Br. of Appellant at 22, he is actually arguing that the court erred in failing to impose a variance sentence. See United States v. Hampton, 441 F.3d 284, 288 n.2 (4th Cir. 2006) (noting that district court "utilized the language of 'departure' rather than what has more recently become known as a 'variance,'" and explaining difference).