Christopher ALLEN, Jr., Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 01–1027.

United States Court of Appeals,
Sixth Circuit.

Aug. 29, 2002.

Before DAUGHTREY and CLAY, Circuit Judges, and WILLIAMS,* District Judge.

PER CURIAM.

Christopher Allen, the *pro se* petitioner in this case, sought relief under 28 U.S.C. § 2255, alleging constitutional error in his conviction and sentence. Allen had been convicted on eight counts related to his participation in a conspiracy to commit a series of armed robberies and drug sales in violation of the Racketeering Influenced and Corrupt Organizations Act. 18 U.S.C. § 1962(c). He now alleges that he received ineffective assistance of counsel on appeal, when his attorney failed to challenge (1) his sentence of 360 months on the RICO count, on the ground that it is beyond the maximum mandated by the RICO sentencing statute; (2) the sufficiency of the evidence to establish the interstate element of the RICO charge; and (3) the sufficiency of the evidence to prove the existence of a RICO enterprise. We find no reversible error in the district court's judgment denying the motion to vacate and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Christopher Allen, Jr., was a member of a group of more than 20 individuals known as the "Home Invaders," who joined together to commit a series of armed robberies of individuals that they suspected to be involved with drug dealing and other illegal activities, on occasion posing as law enforcement officers executing search warrants. Predicting, sometimes with actual knowledge, that the homes of known drug dealers were likely to contain drugs, money, guns, and other valuables, the mem-

bers of the group would, in heavily armed smaller gangs, forcibly invade the victims' homes in Lansing and Detroit, Michigan.

During the trial, eight of the co-conspirators testified to the details of 20 armed robberies that they committed with Allen. These offenses varied in the degree of violence used, but they often included assaults on victims, from handcuffing and battery to shooting one of the victims in the leg. Curtis McDaniel and Michael Avery, two of the co-conspirators, testified that Allen often planned those robberies in which he was not directly involved by identifying the victims and providing information concerning the potential loot to others in the group. McDaniel added that when drugs were confiscated, it was Allen's responsibility to sell them. In addition to the drugs, large amounts of cash, several firearms, jewelry, betting numbers, and at least one credit card were stolen. The proceeds from the enterprise were divided among the co-conspirators, several of whom, including Allen, sold much of their take to local pawn stores. The trial testimony established that at least one of the pawn shops where the robbery proceeds were sold, Zeidman's Pawn Shop, was engaged in interstate commerce. Additionally, Janet Davis, the girlfriend of co-defendant Yo Snyder, attempted to use a Sears credit card stolen in one of the robberies to purchase goods at a Detroit area Sears store.

In addition to selling the drugs obtained in the robberies, Allen was also engaged in selling cocaine obtained from other sources. At trial this involvement was established through the testimony of several witnesses, along with a wiretapped conversation between Allen and another co-con-

---

* The Hon. Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

spirator. The taped conversation referred to drug pickups of "eight balls of cocaine," as well as the exchange of cash and the transfer of a gun.

When law enforcement finally caught up with the Home Invaders, Allen was named in eight counts of a 22–count indictment, along with 21 co-defendants, on charges of violating the Racketeer Influenced and Corrupt Organizations Act (RICO), conspiring to violate RICO, violating the Travel Act, conspiring to distribute marijuana and cocaine, and using a telephone to facilitate a drug conspiracy. Allen was convicted on all eight counts and sentenced to 360 months on the RICO counts and the drug-trafficking charge, 240 months for the Travel Act violation, and 48 months on the telephone counts, the sentences to run concurrently for an effective sentence of 360 months. His conviction and sentence were affirmed on appeal. *See United States v. Allen,* 170 F.3d 572 (6th Cir. 1999).

Allen subsequently filed a motion to vacate sentence under 28 U.S.C. § 2255, alleging that his appellate counsel was constitutionally ineffective in failing to raise on direct appeal several challenges to the sufficiency of the evidence presented at trial and the sentence imposed. Approximately one month after filing his original motion, Allen filed an amended motion raising two additional claims: that his sentence on the RICO convictions exceeded the statutory maximum, and that there was an error in the drug calculations used to set his guidelines range on the drug convictions. The district court granted partial relief, re-sentencing Allen on one of the drug counts and the Travel Act conviction, but denied relief on the remaining grounds. That denial is now the focus of this appeal.

## ANALYSIS

### A. Failure to Challenge the RICO sentence

Allen first insists that appellate counsel should have appealed the propriety of his sentence, on the theory that the district court lacked the capacity to impose a 360–month sentence for his conviction on the RICO count. He also argues that the maximum sentence to which he is liable is 20 years. We disagree with this contention.

The sentencing provision of RICO, 18 U.S.C. § 1963(a), provides in relevant part:

> Whoever violates any provision of Section 1962 of this Chapter shall be ... imprisoned not more than twenty years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)....

"Racketeering activity" is defined in 18 U.S.C. § 1961(1) as:

> (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year ...

Allen was convicted of violating the Michigan armed robbery statute, M.C.L.A. § 750.529, a provision that mandates a punishment of up to life imprisonment.

Allen argues that 18 U.S.C. § 1963(a), specifically the language "or for life when the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment," is ambiguous when considered in conjunction with the two general federal sentencing statutes, 18 U.S.C. § 3553 and 28 U.S.C. § 944. Allen reasons that federal sentencing generally does not consider what the relevant state

punishment would be if the crime were pursued as a state offense and, accordingly, that no such provision in the state statutory sentencing scheme should be read into 18 U.S.C. § 1963(a). Allen recognizes that RICO does encompass violations of state law as racketeering activities subject to the provisions of § 1962, but he argues that the language in the sentencing provision was designed to allow a maximum of life only when the federal maximum penalty includes life imprisonment. Allen insists that to the extent that the statute can be read as ambiguous, any ambiguity should be read in favor of leniency to the defendant.

■ The district court denied Allan's claim based on a plain language reading of the statute. We conclude that this decision was proper. The general sentencing provisions highlighted by Allen delegate authority to the United States Sentencing Commission, as well as the sentencing judge, to determine an appropriate sentence commensurate not only with the illegal conduct leading to the conviction, but also with a variety of public policy concerns. *See* 28 U.S.C. § 994; 18 U.S.C. § 3553. While these statutes may be used to argue that federal sentencing authorities are not generally bound by state sentencing provisions, they do not foreclose the possibility that state sentencing provisions may be specifically incorporated into federal law. There is no dispute that the RICO statute uses state offense definitions in order to define "racketeering activities" for the purpose of the Act. See 18 U.S.C. § 1961(1). Similarly, the relevant sentencing provision, 18 U.S.C. § 1963(a), appears on its face to incorporate the state sentencing maximums for the "racketeering activities" to the extent that they carry a maximum punishment of life imprisonment. There is no principle of federal sentencing or theory of Congressional au-

thority that negates the feasibility such an incorporation. The statute clearly could have specified that the maximum of life imprisonment was relevant only to the extent that it was a federal sentence, but no such delineation was made; rather, the sentencing provision refers to "racketeering activity," a term of act that specifically includes *both* state and federal offenses. *See, e.g., United States v. Granderson,* 511 U.S. 39, 46, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (explaining the importance of reading statutes as designed to convey what the text plainly states and noting that, when limitations are intended, it is up to Congress to express them clearly). Accordingly, because the statutory language is clear on its face, we hold that the district court properly interpreted 18 U.S.C. § 1963(a) in imposing a sentence of 360 months on Allen.

B.  Sufficiency of the Evidence on Interstate Commerce Element of the RICO Claim

In his second claim of error, Allen argues that his trial counsel was ineffective on appeal in not challenging the government's failure to establish that the alleged RICO enterprise was related to interstate commerce. *See* 18 U.S.C. § 1962(c) (enterprise's activities must "affect interstate or foreign commerce"). However, "[t]he law is well settled that for purposes of § 1962(c) the criminal enterprise need only have a minimal impact upon interstate commerce." *United States v. Robinson,* 763 F.2d 778 (6th Cir.1985). Moreover, only the criminal enterprise itself or the racketeering activities of those associated with the enterprise, not the conduct of each individual defendant, must affect interstate commerce. *See United States v. Groff,* 643 F.2d 396, 400 (6th Cir.1981).

■ The government points to evidence introduced at trial to establish the inter-

state effects element. First, Allen was found guilty of selling drugs that had been stolen in the home invasions in both Michigan and Ohio. Second, Allen was convicted of two racketeering acts of engaging in interstate phone calls in furtherance of the drug sale operation run as a part of the RICO conspiracy. Third, evidence produced at trial demonstrated that the girlfriend of a co-conspirator attempted to use a Sears card stolen from one of the homes. Finally, the evidence at trial established that some of the robbery proceeds were sold to pawn shops engaged in interstate commerce. This evidence is clearly sufficient to establish the requisite minimal link to interstate commerce. Accordingly, we conclude that a rational jury could have found that the actions of the Home Invaders had at least a *de minimus* effect on interstate commerce and, thus, it cannot be said that counsel was ineffective in failing to raise this issue on appeal.

C. Sufficiency of the Evidence in Establishing a RICO Enterprise and a Pattern of Racketeering

Allen's final claim of ineffective assistance concerns his appellate counsel's failure to challenge the sufficiency of the evidence at trial to support the defendant's RICO convictions, purportedly on the ground that the government failed to establish the existence of an "enterprise." That term is defined in 18 U.S.C. § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." In this case, the indictment charged that the relevant "enterprise" was comprised of at least 22 individuals associated "in fact" for the purpose of engaging both in the armed robberies and illegal drug activity. There is no question that an enterprise, for the purposes of RICO, may be a group of individuals joined solely for

the purpose of engaging in illegal activity. *See United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

█ Allen is correct in asserting that a pattern of racketeering activities alone does not establish the existence of an enterprise, *see Turkette*, 452 U.S. at 583, 101 S.Ct. 2524, and that "in order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'racketeering activity'." *Id.* Furthermore, "[t]he former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* The evidence in this case established that the defendant was involved in at least 21 armed robberies between January 1993 and October 1994. The eight co-conspirators who testified at trial detailed the operations of a group of individuals who divided responsibility in the planning, execution, and division of proceeds of the robberies. These witnesses also confirmed that the group targeted a specific class of victims—suspected drug dealers. Different members of the larger groups would rotate involvement in the individual robberies. One witness testified that Allen was the member in the group charged with the responsibility of selling the drugs stolen from victims.

This evidence, when considered in its totality, does not suggest, as Allen argues, that the defendants, or the offenses, were improperly joined under Federal Rule of Civil Procedure Rule 8(b). Rather, it establishes a continuing, ongoing organization of individuals joined in the common purpose of engaging in armed robberies for the financial gain of the group members. Accordingly, we conclude that the government properly established the existence of an "enterprise" as required by 18 U.S.C. § 1962(c). It follows that Allen's

attorney was not ineffective in failing to raise this issue on appeal.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in denying relief under § 2255.