In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 14-2737, 14-2818

EMMANUEL MARTINEZ AND
TIMOTHY VALLEJO,

*Petitioners-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeals from the United States District Court for the
Eastern District of Wisconsin.
Nos. 2:13-CV-00278, 2:12-CV-01051 — **Rudolph T. Randa**, *Judge*.

ARGUED SEPTEMBER 28, 2015 — DECIDED OCTOBER 16, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioners Emmanuel Martinez and
Timothy Vallejo appeal from the district court's denial of
their motion to vacate, set aside, or correct their sentences
under 28 U.S.C. § 2255. They were separately sentenced to
life in prison for violating the Racketeer Influenced and Cor-
rupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), for
crimes committed when they were juveniles, including first-

degree murder. Martinez and Vallejo contend that they are entitled to new sentencing hearings under *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that mandatory sentences of life in prison without parole for juveniles violate the Eighth Amendment. The district court denied their § 2255 motions, reasoning that petitioners' life sentences did not violate *Miller* because they were not mandatory. For the reasons that follow, we agree and affirm.

## I. Background

### A. Petitioners' RICO Convictions and Sentencings

In 2005, Martinez, Vallejo, and forty-seven other people were indicted for crimes committed while they were members of the Milwaukee chapter of the Latin Kings gang organization. Both Martinez and Vallejo pled guilty to a RICO offense in violation of 18 U.S.C. § 1962 and admitted to engaging in predicate racketeering activities, including the murder of Kevin Hirschfield on April 19, 2003. Martinez and Vallejo encountered Hirschfield when he intervened in a fight between members of the Latin Kings after stopping at a gas station in Milwaukee. Armando Barragan, the leader of the 19th Street Latin Kings, mistakenly attributed a punch he received to Hirschfield and ordered Vallejo to shoot him. Vallejo, who was seventeen years old at the time, fired five or six times. Martinez, who was sixteen, also fired seven shots at Hirschfeld.

Martinez's plea agreement included one additional predicate racketeering act: the attempted murder of a rival gang member, Daniel Fonesca. Vallejo's plea agreement included two additional predicate acts: the attempted murders of Geremais Hernandez and Jose Rivera. Both Vallejo and Mar-

tinez were under the age of eighteen when they committed these acts.

Martinez and Vallejo separately entered into plea agreements, which addressed potential penalties. The agreements stated that the offense to which they pled guilty "carrie[d] the following maximum term of imprisonment and fine: … life imprisonment and $250,000." The plea agreements also stated that the district court could "impose any sentence authorized by law up to the maximum penalties," and that it had the discretion to "impose a reasonable sentence above or below the calculated guideline range," which was 360 months to life.

At Martinez's July 10, 2009 sentencing hearing, the government asked the district court to sentence Martinez "to a term of imprisonment within the statutory guideline range." Defense counsel asked the district court to consider a sentence "in the range of 20 to 25 years." Before sentencing Martinez, the district court discussed the considerations that informed the sentence, including the nature and circumstances of the offense, the sentencing guidelines' recommended range, and the history and characteristics of the defendant. The court noted that Hirschfield's murder was a heinous crime and discussed how the Latin Kings had negatively impacted the Milwaukee area. The district court observed that Martinez came from a dysfunctional family and the gang had become a substitute family. The court also observed that Martinez was a young person when he committed the crimes, and that his judgment was "blunted by immaturity, and drugs, and associations, and illusions." Nonetheless, the court imposed the "maximum sentence"—life in prison.

Vallejo was sentenced six months later, on January 26, 2010. At Vallejo's sentencing hearing, the district court stated that it would consider the sentencing guidelines' recommended range of 360 months to life, as well as the factors set forth in 18 U.S.C. § 3553, "which direct the Court to impose a sentence not more than necessary to achieve the objectives of that section." The court considered that Vallejo had come from a dysfunctional family and that he had a "young mind" and bad judgment. But in light of the "monstrous" nature of Hirschfield's murder, the court sentenced Vallejo to life in prison. Neither Martinez nor Vallejo filed a direct appeal.[1]

### B. Supreme Court Decision in *Miller v. Alabama*

On July 25, 2012, the Supreme Court decided *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment prohibits the imposition of a mandatory life sentence without the possibility of parole for juveniles. The underlying criminal cases involved two fourteen-year-old offenders who were convicted of murder and sentenced to life in prison without the possibility of parole. In both cases, the sentencing authority had no discretion to impose a different punishment: "State law mandated that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate." *Id.* at 2460.

---

[1] The district court suggested that the government move for a sentence reduction under Federal Rule of Criminal Procedure 35 if Martinez and Vallejo assisted the government in prosecuting Armando Barragan, but Barragan has not yet been apprehended.

In *Miller*, the Supreme Court emphasized the importance of allowing the sentencing authority to consider the mitigating qualities of youth, including the defendant's "immaturity, impetuosity, and failure to appreciate risks and consequences," as well as his family and home environment, and to adjust the sentence as necessary in light of these factors. *Id.* at 2468. Although the Supreme Court did not address defendants' alternative argument, that the Eighth Amendment requires a categorical bar on life-without-parole sentences for juveniles, it held:

> [W]e think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. … Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id*. at 2469 (internal citations omitted).

### C.  Petitioners' § 2255 Proceedings

Within a year of the Supreme Court's decision in *Miller*, Martinez and Vallejo separately filed *pro se* motions to vacate, set aside, or correct their sentences under 28 U.S.C. § 2255. Martinez and Vallejo argued that their sentences violated *Miller* because they were sentenced to life in prison for offenses committed as juveniles.

On October 4, 2013, the district court denied Martinez's motion. It found that under the RICO sentencing scheme, "the [c]ourt has the discretion, after analysis of the appropri-

ate sentencing factors, to sentence a juvenile defendant any-where along the sentencing scale up to life." The district court concluded that because "[i]t was not required to im-pose the sentence that it did," Martinez's sentence was not mandatory and did not violate *Miller*. The district court de-nied Vallejo's motion for the same reasons on June 25, 2014.

Martinez did not receive notice of the district court's de-cision until after the deadline to file an appeal had passed. Several months later, Martinez and Vallejo together filed a joint motion for relief from the judgment under Federal Rule of Civil Procedure 60(b), which the district court granted on July 30, 2014. Martinez then filed a notice of appeal and a motion for a certificate of appealability on August 6, 2014. Vallejo filed the same ten days later. On October 28, 2014, we granted the certificates of appealability and consolidated the appeals.

## II. Discussion

The parties agree that Martinez and Vallejo were sen-tenced to life in prison for offenses committed as juveniles and that *Miller* applies retroactively. They dispute whether the district court correctly determined that petitioners' life sentences were not mandatory under the RICO sentencing provision, 18 U.S.C. § 1963(a). We review this issue of statu-tory interpretation de novo. *United States v. Jones,* 372 F.3d 910, 911–12 (7th Cir. 2004).

Martinez and Vallejo were convicted of criminal RICO offenses under 18 U.S.C. § 1962(c). A conviction under that statute must be based on at least two predicate racketeering activities, which form the basis for the ultimate sentence un-der § 1963(a):

> Whoever violates any provision of section 1962
> of this chapter shall be fined under this title or
> imprisoned *not more than* 20 years (*or for life* if
> the violation is based on a racketeering activity
> for which the maximum penalty includes life
> imprisonment), or both … .

18 U.S.C. § 1963(a) (emphasis added).

There are two plausible interpretations of this statutory language. First, it is possible that the statute mandates a life sentence whenever the predicate act carries a maximum sentence of life in prison. This is the interpretation that Martinez and Vallejo ask us to adopt. Under this reading, the phrase "not more than" does not apply to the parenthetical. Thus, in the cases of Martinez and Vallejo, the statute provides that they "shall be … imprisoned … for life."

Alternatively, it is possible that § 1963(a) sets only maximum sentences. Under this interpretation, the sentencing provision sets a maximum sentence of twenty years in most cases, or life if the predicate offense carries that option. Thus, the statute provides that Martinez and Vallejo "shall be … imprisoned not more than … for life."

The district court adopted the second interpretation—that § 1963(a) established a maximum, not a mandatory, sentence of life in prison for Martinez and Vallejo. At each of Martinez's and Vallejo's sentencing hearings, the court stated that it could impose a sentence ranging from 360 months to life, and then weighed the aggravating and mitigating factors to determine whether the offense warranted a sentence

below the maximum.[2] At no point did the district court indicate that it was required to impose a life sentence. The facts of this case are therefore very different from those in *Miller*, where the sentencing authority in one of the underlying cases explained, "there's only one possible punishment." 132 S. Ct. at 2461 (internal quotation marks omitted).

Nonetheless, because reasonable minds could differ as to the meaning of § 1963(a), it is ambiguous. *See River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649–50 (7th Cir. 2011). "Because we see ambiguity, we look at the entire text and structure of the statute to determine its meaning." *United States v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004).

It is undisputed that the first part of § 1963 sets a maximum sentence of twenty years. Although it is unclear whether the "not more than" language also applies to the parenthetical, the fact that the parenthetical refers to a "maximum penalty" suggests that both clauses set maximum sentences. This interpretation would also allow for a consistent application of the provision across all types of crimes.

Two neighboring statutes that penalize violent racketeering crimes are drafted very differently. These statutes indicate that the only sentencing options for racketeering crimes involving murder are death or life imprisonment. *See* 18 U.S.C. § 1958 (prohibiting murder for hire and providing

---

[2] Although the district court ultimately imposed life sentences, it considered Martinez and Vallejo's youth and family environments, as well as the potential effects of peer pressure. We therefore reject petitioners' argument that they did not receive the individualized sentencing that *Miller* requires.

that "if death results," the pepetrator "shall be punished by death or life imprisonment"); 18 U.S.C. § 1959 (prohibiting violent crimes in aid of racketeering activities and providing that an offender "shall be punished—for murder, by death or life imprisonment"). These penalty provisions are severe, but they are not complex. Had Congress wished to provide for a mandatory penalty for murder under § 1963, it easily could have used this same language. *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 216–17 (2005) (finding that where Congress imposed an explicit overt act requirement in twenty-two conspiracy statutes, but did not do so in a provision governing conspiracy to commit money laundering, the Court would not read in such a requirement); *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176–77 (1994) (holding that because "Congress knew how to impose aiding and abetting liability when it chose to do so," and the statute in question did not include the words "aid" and "abet," the statute did not provide for aiding and abetting liability).

Federal courts across the United States have adopted the government's interpretation by sentencing defendants under § 1963(a) to sentences less than life, even when the predicate offense carries a possible life sentence. *See, e.g.*, *United States v. Fields*, 325 F.3d 286, 288 (D.C. Cir. 2003) ("[F]or the armed kidnapping and the RICO charge, [the district court] imposed sentence terms of 292 months, well within the *life maximum*." (emphasis added)); *Allen v. United States*, 45 F. App'x 402, 404–05 (6th Cir. 2002) (upholding a 360 month sentence for a RICO conviction and finding that § 1963 incorporates federal and state sentencing maximums); *United States v. Bernard*, 10 F. App'x 18, 19 (2d Cir. 2001) (observing that where defendant's predicate felony "carries a maximum term of life imprisonment, that maximum applies" and up-

holding defendant's 405 month sentence). This interpretation is consistent with the Department of Justice's position that § 1963(a) sets a maximum sentence of twenty years in typical cases, or a maximum sentence of life where the underlying racketeering activity provides for life imprisonment. *See* Criminal RICO: 18 U.S.C. §§ 1961–1968: A Manual for Federal Prosecutors (5th rev. ed. 2009).

The legislative history, which we are permitted to consider when construing an ambiguous statute, supports the government's interpretation. *See Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1128 (7th Cir. 2008). Section 1963(a) originally provided for a maximum penalty of twenty years in all cases. *See* Racketeer Influenced and Corrupt Organizations, Pub. L. No. 91, 452 § 901(a), 84 Stat. 941, 943 (1970). In 1988, Congress amended the statute by adding the parenthetical. The House of Representatives record explains that Congress was concerned with the anomaly that, as originally enacted, § 1963 limited the maximum sentence to twenty years even when the underlying predicate crime was punishable by a much longer sentence:

> Section 1963(a) presently provides for a maximum prison term of 20 years. It is possible, however, for a RICO prosecution to be based, in part, upon a "racketeering activity" … that authorizes the imposition of a prison term in excess of 20 years. [The amendment] would, in such a case, *authorize a maximum prison term of life.*

134 Cong. Rec. 33300 (1988) (emphasis added). The accompanying Senate report similarly explains that the amendment "*permits* imprisonment for life if the defendant is con-

victed of a predicate offense that carries a maximum penalty of life." S. Rep. No. 100-459, at 7 (1988) (emphasis added).

If we were to set aside this legislative history and adopt Martinez and Vallejo's interpretation, we would require courts to impose a sentence of life in prison under § 1963 whenever the predicate offense carries a life sentence as an option. This interpretation would conflict not only with settled sentencing practices, but also with the spirit of *Miller* and other Supreme Court decisions that have moved away from mandatory sentencing to allow courts the flexibility to "tailor the sentence in light of other statutory concerns." *United States v. Booker*, 543 U.S. 220, 245 (2005) (Breyer, J., dissenting in part). We decline to undermine this trend in sentencing law by reading a severe mandatory penalty into § 1963.

### III. Conclusion

Because Martinez and Vallejo's life sentences were imposed after an individualized sentencing, and not by statutory mandate, we conclude that the district court did not violate *Miller*. For this reason, we need not reach the question of whether *Miller* applies retroactively.

AFFIRMED